C. FRANK JAMES v. ATLANTIC & EAST CAROLINA RAILROAD COMPANY, A CORPORATION; AND ATLANTIC & NORTH CAROLINA RAILROAD COMPANY, A CORPORATION.

(Filed 23 May, 1951.)

**1. Automobiles § 20b—**

What is a joint enterprise is a question of law, and therefore is for the determination of the court when the facts are not in dispute, it being an issue for the jury only upon disputed facts.

**2. Same—**

Where the driver and passenger are engaged in a joint enterprise, negligence on the part of the driver will be imputed to the passenger and will bar the passenger's right to recover against a third person.

**3. Same—**

It is not sufficient that the driver and passenger be engaged in a common enterprise in order for the doctrine of joint enterprise to obtain, but it is also required that each have such control over the car as to be substantially in the joint possession of it.

**4. Municipal Corporations § 11½ b—**

A police officer has only such powers as are given him by the Legislature, expressly or derivatively.

**5. Automobiles § 20b—**

Evidence that two police officers of equal rank were engaged in patroling the streets of the municipality in an automobile furnished them by the city for their joint use in performing such duty, is sufficient to support a finding that they were engaged in a joint enterprise, since each had an equal right to direct and govern the movements and conduct of the car.

**6. Railroads § 4—**

Evidence of negligence on part of driver of car in failing to keep a proper lookout and in failing to exercise due care for his own safety in driving upon a grade crossing in front of a slow-moving shifting engine *held* to require the submission of the issue to the jury.

**7. Same: Automobiles § 20a—**

Evidence of negligence on part of passenger in car engaged in joint enterprise with driver in failing to warn driver of approach of engine to grade crossing which passenger saw or should have seen in exercise of due care, *held* to require submission of the issue to the jury.

**8. Negligence § 17—**

Contributory negligence is an affirmative defense upon which defendant has the burden of proof when relied on by him. G.S. 1-139.

**9. Negligence § 20: Appeal and Error § 39h—**

Where the issues of negligence and contributory negligence are raised by the pleadings and evidence, an instruction that no burden of proof rested on defendant, but that plaintiff had the burden of satisfying the jury by the greater weight of the evidence before plaintiff would be entitled to recover, must be held for reversible error, since the burden of proof on the issue of contributory negligence rested on defendant.

**10. Appeal and Error § 39c—**

The contention of defendant that the judgment of the lower court in its favor should be sustained notwithstanding error because in any event defendant would be entitled to nonsuit on the issue of contributory negligence, cannot be sustained when the question of nonsuit is not presented on the appeal.

APPEAL by plaintiff from *Halstead, Special Judge,* at January-February 1951 Civil Term, of WAYNE.

Civil action to recover damages for personal injury sustained by plaintiff in a collision between an automobile in which he was riding and a shifting engine of defendant, Atlantic & East Carolina Railroad Company, at railroad crossing over North John Street in the town of Goldsboro, N. C., allegedly resulting from actionable negligence of the above named defendant—as lessee of its co-defendant.

These facts seem to be uncontroverted: John Street, which runs in north-south direction, intersects with Atlantic Street, which runs in east-west direction. The portion of John Street north of this intersection is called North John Street. Just north of this intersection three tracks of defendant's railroad cross North John Street,—the main line track being the most southern, then a spur track, and then a pass track or siding, in the order named going from south to north.

The collision occurred about the hour of 4:40 or 4:50 a.m., and well before sunrise on 5 February, 1949. At the time, plaintiff was about his business as a police officer of the city of Goldsboro, riding in a patrol car of the city, then being driven by R. L. Morse, another police officer of the city, who was assigned to duty with plaintiff; and the patrol car was traveling southward along North John Street, and the shifting engine and cars were moving eastwardly on the main line track.

Plaintiff, in his complaint, alleges, as acts of negligence on the part of defendant Atlantic & East Carolina Railroad Company, proximately causing the injuries of which he complains, that as its Diesel shifting engine and train of cars approached the crossing over North John Street, the headlights of the engine were not burning, and no signal of any kind, by whistle, bell or otherwise, was given nor was there a flagman or signalman at the crossing to warn of the approach of the engine and train.

Defendant Atlantic & East Carolina Railroad Company, in its answer, which is adopted by its co-defendant, denies these allegations of negligence set forth against it in the complaint, and denies liability to plaintiff for injuries he sustained,—and avers that at the time in question the engine had its lights burning, that a flagman was on the pilot of the engine, and that signals of the presence of the locomotive were given by blowing of whistle and ringing of bell.

And on the trial in Superior Court, plaintiff and defendant offered testimony tending to support their respective contentions in this respect.

On the other hand, defendant Atlantic & East Carolina Railroad Company, in its further answer, and in bar of plaintiff's right to recover herein, makes these averments: That at the time in question R. L. Morse, driver of the automobile in which plaintiff was riding, and plaintiff were engaged in a joint enterprise in that they were both upon a mission in the performance of their duties as police officers of the city of Goldsboro and were operating a patrol car belonging to the city which was furnished

to them for their joint use, and over which they had joint control, in carrying out the joint enterprise, and that the plaintiff and the said R. L. Morse were guilty of negligence and carelessness which was the sole and proximate cause of the injury to the plaintiff in the following particulars, briefly stated: That the driver of the automobile (1) was operating it at an excessive rate of speed, (2) failed to stop, look and listen for the approach of trains before entering into and upon the crossing as required by statute, (3) was not keeping a proper lookout ahead, and (4) upon observing the locomotive, attempted to run around in front of same after it had passed over the center of the crossing; and that the carelessness and negligence of the driver was consented to, approved and acquiesced in by, and is imputed to plaintiff, and constitutes contributory negligence on his part, and is pleaded in bar of his right to recover against the defendant in this action.

Then defendant further avers that plaintiff, by his own negligence and carelessness proximately contributed to his injury in that (1) he saw, or by the exercise of due care, should have seen the defendant's locomotive in time to have given warning to the driver of the automobile, (2) he failed to give the driver of the automobile warning of the presence of the locomotive, and (3) he was aware, or should have been aware, that the driver was operating the automobile in careless and negligent manner, and without keeping a proper lookout for the approach of defendant's locomotive at and upon the crossing, and failed to remonstrate with the driver and to caution him of the danger of such careless and negligent driving, all of which is pleaded in bar of plaintiff's right to recover in this action.

And upon the trial in Superior Court, plaintiff, on direct examination, relating to defendant's averment of joint enterprise, testified: "Mr. Morse was driving . . . and he had control of the automobile. I did not have any control of that automobile." But on cross-examination in respect thereto, he testified: "At least two years prior to this accident Mr. Morse and I have been working together as police officers . . . We were on the night shift . . . On the night of the accident we went to work at 12 o'clock, and we were working together. We worked by automobile travel. We had one patrol car and we were operating that. We ride all over Goldsboro and check store fronts and business places . . . That's what we were doing together . . . We exchange drivers. He drives some and I drive some . . . The first one gets under the wheel does the driving, when out on police activities. He was out to do the same identical thing I was to do. The car was delivered to us for our joint use in carrying on our police activities . . . It was delivered on this occasion to Mr. Morse and me for our use in doing our police activities that night." Further, on re-direct examination, plaintiff testified: "I drive the automobile

sometimes and Mr. Morse drives it sometimes, the first one to get to the car. In answer to your question, 'State whether or not the man who drives the automobile has the sole and exclusive duty of driving the automobile?', I will say 'Yes, sir.' In answer to your question, 'The man who rides with him has nothing to do with that?', I will say, 'That's right.' That was the situation with reference to the operation of that automobile at the time I was injured. Mr. Morse was driving the car . . ."

Also, R. L. Morse, as witness for plaintiff, testified on cross-examination, in pertinent part: "Mr. James and I have worked together prior to the time of the accident . . . patrolling in an automobile . . . two or three years. It was not any particular one's job to drive the patrol car . . . either I or Mr. James drove this particular car . . . we were supposed to police over the city of Goldsboro . . . check . . . warehouses and stores . . . Those were our duties together, patrolling."

Then on re-direct examination this witness continued: "That car had one clutch pedal, one brake pedal, one emergency brake and one steering wheel and I had control of all these. At the time the accident occurred I was in complete control of that car. At the time this collision occurred, immediately preceding, sometime preceding it and at the time of this accident, Mr. James' duties were to look out for drunks and to inspect doors, etc. . . . Mr. James used the spotlight and flashlight checking from his window in the car. . . . That was to his right."

And on re-cross-examination the witness testified: "In answer to your question 'Mr. Morse, during your patrol duties that night did Mr. James observe the same conditions on the street, for example, a person appearing to be drunk and if he were to call your attention to stop, would you stop?', I will say, 'Yes, sir.' "

Also upon the trial in Superior Court, both plaintiff and R. L. Morse testified that they were familiar with the railroad crossing of John Street, the layout of tracks, and the operation of the shifting engine on the tracks of defendant,—Morse saying: "I am familiar with that intersection . . . I have crossed it numerous times. I am familiar with the operation of the trains along those tracks, and switch engine . . . have seen them out there on numerous occasions before then. I have observed them operating early in the morning about the same time . . . between four and five o'clock."

And plaintiff, describing the scene of and referring to events immediately preceding the collision, testified: "Mr. Morse and I were . . . in the discharge of our duties as police officers at the point where North John Street crosses the railroad tracks . . . that street light was there . . . in the intersection . . . around 60 feet from the point at which the automobile . . . was struck. The street light is about 20 feet high. The

light was burning at the time but it wasn't giving but very little light in the intersection where the railroad was . . . We had crossed two tracks before we got to the track that the train hit us on . . . the weather was clear. It was dark . . . we . . . checked stores and fronts and come to the Goldsboro Iron & Metal Company. We stopped and shined our lights on the front of the building on the doors, which is, I would say, 80 or 90 feet from the railroad, pulled off from there at a slow rate of speed, and we got to this third track . . . I looked both ways . . . I looked and saw the front of the engine 6 or 8 feet from the car. I said, 'Look out, Dick,' and by that time they hit us in the side . . . The lights of our automobile were burning at that time and they were burning all the way as we proceeded across that crossing . . . No, I wouldn't say we stopped. We only had about 20 steps to travel before we hit the railroad . . . We did look . . . There was nothing to obscure our vision to the left . . . I did not say anything to Mr. Morse about stopping and looking and listening . . . The street light was burning . . . but it don't throw no light down the track . . . We were going across—swinging to the west side of the street as we came across. I would say we were going 2 or 3 miles an hour."

And R. L. Morse testified: "I could not say whether either of us got out in this section of town immediately prior to the collision . . . slowed down almost to a complete stop."

Defendant, on the other hand, offered testimony of members of the train crew tending to show that a brakeman was on the front of the engine as it came up to the crossing; that there was a light on the front of the engine; that the light was burning at the time; that the bell was ringing; that the engine was moving about four miles an hour; and that when the engine was about two-thirds across the crossing the car hit the north side of the Diesel at the front step.

The case was submitted to the jury, over objection and exception by plaintiff, upon these issues:

"1. Was the plaintiff injured and damaged by the negligence of the defendant as alleged in the complaint?

"2. If so, did the plaintiff contribute to his injury and damage by his own negligence as alleged in the answer?

"3. Were the plaintiff and the driver of the automobile in which the plaintiff was riding engaged in a joint enterprise at the time of the collision as alleged in the answer?

"4. Did the driver of the automobile in which the plaintiff was riding contribute to the injury and damage of the plaintiff by his negligence as alleged in the answer?

"5. What amount, if any, is the plaintiff entitled to recover of the defendant?"

The jury answered each of the first two issues "Yes," and did not answer either of the remaining issues.

In apt time plaintiff tendered three issues, first as to negligence of defendant, Atlantic & East Carolina Railroad Company, second as to damage, and third as to liability of Atlantic & North Carolina Railroad Company as lessor.

To the refusal of these issues plaintiff excepted.

From judgment in favor of defendant on verdict rendered plaintiff appeals to Supreme Court and assigns error.

*Scott B. Berkeley for plaintiff, appellant.*

*Matt H. Allen and Dees & Dees for Atlantic & E. C. R. R. Co., defendant, appellee.*

*R. Mayne Albright for Atlantic & N. C. R. R. Co., defendant, appellee.*

WINBORNE, J.   The questions, decisive of this appeal, are these: (1) Is there sufficient evidence as shown in the record to require the submission of an issue as to contributory negligence? (2) If so, is there error in the charge in respect to the burden of proof as it relates to the issue of contributory negligence? Both questions deserve an affirmative answer.

In considering the first question it must be borne in mind that the defendants base their plea of contributory negligence on two theories: (1) That the plaintiff and Morse, the driver of the patrol car in which plaintiff was riding at the time of the collision, were engaged in a joint enterprise, and that Morse was negligent in the respects averred in the further answer of defendants, and that his negligence is imputable to plaintiff; and (2) that plaintiff, by his own negligence, contributed to his injuries.

What is a joint enterprise is a question of law for the court. Whether a joint enterprise exists has to be determined to a great extent from the facts in the particular case. *Jernigan v. Jernigan,* 207 N.C. 831, 178 S.E. 587. If the facts be in dispute, the issue is for the jury. But if the facts be not in dispute, the whole resolves itself into a question of law. For the rule in similar question, see *Miller v. Johnston,* 173 N.C. 62, 91 S.E. 593; *Brown v. Hodges,* 232 N.C. 537, 61 S.E. 2d 603.

The annotators say that the authorities are generally agreed that if two or more persons are engaged in a joint enterprise involving the operation of an automobile, and one of them is injured by the negligence of a third party and the concurring negligence of the other party to the joint enterprise, the latter's negligence is imputed to the one injured, and will bar a recovery against the third person. Annotations 62 A.L.R. 440, 85 A.L.R. 630.

This doctrine of joint enterprise is recognized in North Carolina in numerous cases. Much has been written by this Court on what is not, rather than what is, a joint enterprise. However, the principle is clearly stated in *Albritton v. Hill,* 190 N.C. 429, 130 S.E. 5, in this quotation: ". . . 'The circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it. Parties cannot be said to be engaged in a joint enterprise unless there is a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movement of each other with respect thereto. Each must have some voice and right to be heard in its control and management.' Huddy on The Law of Automobiles, 893." See *Pusey v. R. R.,* 181 N.C. 137, 106 S.E. 452; *Williams v. R. R.* (concurring opinion with citations), 187 N.C. 348, 121 S.E. 608; *Charnock v. Refrigerating Co.,* 202 N.C. 105, 161 S.E. 707; *Newman v. Coach Co.,* 205 N.C. 26, 169 S.E. 808; *Johnson v. R. R.,* 205 N.C. 127, 170 S.E. 120. See also citations in *Haney v. Lincolnton,* 207 N.C. 282, 176 S.E. 573; also Annotation 80 A.L.R. 312.

In *Charnock v. Refrigerating Co., supra,* it is said: "A common enterprise in riding is not enough; the circumstances must be such as to show that plaintiff and the driver had such control over the car as to be substantially in the joint possession of it," citing *Albritton v. Hill, supra.*

Moreover, Blashfield, treating the subject, says: "An essential, and perhaps the central, element which must be shown in order to establish a joint enterprise is the existence of joint control over the management and operation of the vehicle and the course and conduct of the trip. There must . . . in order that two persons riding in an automobile, one of them driving, may be deemed engaged in a joint enterprise for the purpose of imputing the negligence of the driver to the other, exist concurrently two fundamental and primary requisites, to wit, a community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right to direct and govern the movements and conduct of each other in respect thereto. The mere fact that the occupant has no opportunity to exercise physical control is immaterial." Cyclopedia of Automobile Law and Practice. Blashfield 4, Sec. 2372.

"The control required is the legal right to exercise control. It does not necessarily require that there be actual physical control." *Murphy v. Keating,* 204 Minn. 269, 283 N.W. 389. To like effect are *Howard v. Zimmerman,* 120 Kan. 77, 242 P. 131; *Crescent Motor Co. v. Stone,* 211 Ala. 516, 101 So. 49.

It may be noted also that a police officer, unknown to common law, is a creature of statute, and as such has, and can only exercise such powers as are given to him by the Legislature, expressly or derivatively. *S. v.*

*Freeman,* 86 N.C. 683; *Martin v. Houck,* 141 N.C. 317, 54 S.E. 29; *Wilson v. Mooresville,* 222 N.C. 283, 22 S.E. 2d 907. The law applies alike to plaintiff and to R. L. Morse, as policemen. Thus when they became policemen of the city of Goldsboro, the existing laws pertaining to the position, entered alike into, and became a part of the relationship thus established as to each of them. In law, as officers, they attained equal rank. And their testimony, shown in the record on this appeal, indicates that the automobile was furnished by the city for their joint use in performing in common the activities of patrolling, in which they were engaged, and that each had an equal right to direct and govern the movements and conduct of the other in respect thereto. The mere fact that only one of them, at a time, could actually physically control the car, is immaterial.

Therefore, in the light of these principles applied to the evidence shown in the record on appeal, there is evidence to support a finding that plaintiff and R. L. Morse, at the time and place of the collision, were engaged in a joint enterprise. Likewise there is evidence tending to support the averment made by defendants as to negligence of R. L. Morse in the operation of the patrol car at the time and place of the collision.

Moreover, there is evidence tending to support the averments made by defendants as to negligence on the part of plaintiff.

Now, as to the second question: Plaintiff's Exception No. 19 is directed to this portion of the charge: "Gentlemen of the jury, another cardinal principle the court will ask you to bear in mind throughout the entire deliberation and discussion of this testimony in arriving at your verdict and that is, that the laboring oar, the burden, is upon the plaintiff in this case to satisfy you by the greater weight of the evidence before he can recover in this action." And plaintiff's Exception No. 24 is directed to this portion of the charge: "The defendant does not have to prove to you anything to your satisfaction; there is no burden upon this defendant with respect to the degree of proof that it will show to you, or has shown to you, but the burden is upon the plaintiff to satisfy you by the evidence and by its greater weight that he is entitled to recover." Both of these exceptions are well taken. While the burden of proof as to the first issue, that is, as to the negligence of defendant, rests upon the plaintiff, the burden of proof as to affirmative defenses is upon the defendant. *Pittman v. Downing,* 209 N.C. 219, 183 S.E. 362. The plea of contributory negligence is an affirmative defense, and when relied upon by defendant, the statute, G.S. 1-139, puts the burden of proving it on the defendant. Among cases so holding are these: *Wallace v. R. R.,* 104 N.C. 442, 10 S.E. 552; *Cox v. R. R.,* 123 N.C. 604, 31 S.E. 848; *Tyree v. Tudor,* 183 N.C. 340, 111 S.E. 714; *Cherry v. R. R.,* 185 N.C. 90, 116 S.E. 192;

*Ramsey v. Furniture Co.,* 209 N.C. 165, 183 S.E. 536; *Pittman v. Downing, supra; Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

Defendants, however, urge that even if it be conceded that the court erred in the charge, such error should not entitle plaintiff to a new trial,—*Munday v. Bank,* 211 N.C. 276, 189 S.E. 779,—earnestly contending that they were entitled as a matter of law to a nonsuit on either the issue of contributory negligence or on the issue of the negligence of the driver while engaged in a joint enterprise. Hence a new trial would be a useless procedure. As to this contention, it is sufficient to say that the question of nonsuit is not presented on this appeal, and may not be considered.

Other assignments of error are not treated, since they may not recur upon another trial.

For error indicated above, a new trial is ordered.

New trial.