HEIRS OF JOSÉ CASTILLO MERCADO, ETC., Plaintiffs and Appellants, *v.* SOL LUIS DESCARTES, SECRETARY OF THE TREASURY OF PUERTO RICO, Respondent and Appellee.

No. 12075.   Submitted June 5, 1961.—Decided June 27, 1961.

---

*Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella,* and *C. Morales, Jr.* for appellants.  *J. B. Fernández Badillo, Secretary*

*of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *José A. García Malpica, Assistant Attorney General,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On June 24, 1953 the Secretary of the Treasury notified the Sucn. José A. Castillo (Partnership) income tax deficiencies for the years 1945 to 1946, both inclusive, amounting to $7,135.55.

The heirs of José A. Castillo Mercado, represented by their Attorney-in-fact and Testamentary Executor, José A. Castillo challenged said deficiencies before the Superior Court. After both parties had filed the corresponding allegations, a trial on the merits was held after which said court rendered judgment dismissing the complaint.

The trial court made, insofar as pertinent, the following findings of fact:

By public deed of May 25, 1944, spouses José Castillo Mercado and Margarita Pietri granted a general power of attorney to their son José Antonio Castillo Pietri, appointing him agent to take charge of, protect and administer all community and separate property of the principals pursuant to the provisions of § § 1600 to 1630 of the Civil Code. Formerly and for more than a year, José A. Castillo Pietri had been in charge of the administration of said property described in the deed of power of attorney as agricultural and urban lands belonging to the principals, farms leased by them, agricultural implements, cattle, crops, in the process of cultivation as well as those stored or existing in any other form, funds, whether they existed as negotiable instruments or in cash. The separate property of the wife consisted of houses for rent and her own residence with an annex.

By virtue of said power the Executor was authorized to use the afore-mentioned funds for any expenses incurred in operating or managing the businesses of the principals; for

the payment of obligations; for the purchasing and selling of real and personal property of any kind. He was also authorized to appear and act in the name and as representative of the principals, separately or jointly, in any type of negotiations or contracts, in public instruments or in any other way. A compensation of $2,000 a year was designated.

Castillo Pietri thus administered the property of the Castillo-Pietri spouses until April 13, 1945 when his father, José Castillo Mercado died.

His widow Margarita Pietri and his children Juana Josefa, José Antonio, Julio Carlos, Carmen, Margarita, María Nicanor, Laura Cecilia, Esperanza, and César Castillo Pietri succeeded the latter. In his will José Castillo Mercado designated his nine children as heirs of two thirds of his property and his wife of the remaining third instead of her usufructuary portion.

Two days after the death of José Castillo Mercado, that is, on April 15, 1945, his widow and children signed a document stating that in order to prevent that the most urgent transactions of the business in the administration of the property of José Castillo and Margarita Pietri be hindered, they appointed José Antonio Castillo Pietri to continue to administer said property temporarily. He was also authorized to communicate with the Banco Caja de Economías y Préstamos of San Germán, depositary of the funds of José Castillo Mercado and Margarita Pietri, and undertake to change the account so that it would continue in the name of Margarita Pietri González and Heirs of José Castillo Mercado. The provisional executor was authorized to use said funds as he had been doing until then by virtue of the deed of power of attorney and to sign the checks issued by him.

By public deed of September 18, 1945, the widow and children of the deceased granted power of attorney to the same José A. Castillo Pietri to administer the properties and

98

businesses of the heirs and of Margarita Pietri with the same powers and under the same terms fixed in the deed of general power of attorney of May 25, 1944 until the partition and division of the property. By another deed of March 31, 1948 they extended the term of the power of attorney. On September 13, 1949 they executed a deed granting express power to José A. Castillo Pietri, to make loans and to issue promissory notes and debt certificates, thus being able, for that purpose, to guarantee the obligations with the property, valuables and rights of the constituents.

In 1949, the widow suffered a severe illness which required special care of doctors and nurses and as a result was physically disable since 1950. Her income from her separate and hereditary property was insufficient to cover the ordinary and the extraordinary expenses incurred by reason of her illness. From 1945 until 1952 the excess of disbursements over the income was $39,064.45.

In February 1953 the children of Margarita, except Virginia, had a family meeting at which the attorney-in-fact and executor informed them about his administration since 1945. It was decided at said meeting to authorize the Executor to make a loan of $50,000 and to secure the same by mortgages on the lands of the heirs. This money would be spent in the payment of the most urgent debts of the heirs who assumed the responsibility of paying almost the total sum of the widow's expenses since 1945 until 1952. It was also agreed at said meeting not to partition the property and that José A. Castillo Pietri should continue in the administration thereof for the lifetime of the widow Margarita Pietri.

The taxes owed by the widow and the heirs were paid by checks drawn against the funds of the latter which were derived from the profits obtained in their sugar cane plantations, pastures and truck gardening, and the rents of the houses. All other expenses were met by these funds. The

heirs were also engaged in the sale of milk and cattle, the grazing of cattle for a monthly fee per head and in the excavation and sale of stone.

From 1946 to 1949 the following changes or repairs were made in the property: a part of the widow's residence began to be used as office of the Executor; said residence was improved at a cost of $3,000; $1,000 were spent on the reconstruction of an "outbuilding" in one of the farms and in another an immersion tank for cattle was constructed at a cost of $500.

The different shares of the coheirs in the benefits from the properties and negotiations were not timely distributed. Nevertheless, the Executor kept an account in his books of the amount corresponding to each one of them and which would have been delivered if it had not been spent.

As first error the plaintiffs allege that the trial court lacked jurisdiction to consider the case on the merits. They base this allegation on the lack of legal and valid notice of tax deficiency. In support of their contention they allege that the notice of deficiencies was made out to "Sucn. José. Castillo Mercado (Partnership)" and that since the succession has no legal personality and no partnership whatsoever is registered under the name of José Castillo Mercado no notice of tax deficiency has been delivered to the real taxpayer, that is, to each and every one of the heirs of the deceased José Castillo Mercado, who composed his succession. and his widow Margarita Pietri.

The error was not committed. Without having to consider other legal principles to set aside the error charged, it will suffice to say that the plaintiffs, supported by the notice that they attack now before us, resorted to the administrative review granted by law and later appealed to the Superior Court and invoked its jurisdiction in order to obtain a judicial decision to the effect that the members of the Succession of José Castillo Mercado and his widow were not, for the pur-

poses of the Income Tax Act, a joint venture during the years covered by the deficiencies notified. We decided a similar matter against the plaintiffs in *Heirs of Suárez* v. *Secretary of the Treasury*, 82 P.R.R. 311.

In the second and third assignments the plaintiffs allege that:

"Second Error: Even assuming that the Court had jurisdiction to decide this case on the merits, it erred in assuming that the applicable law was the Income Tax Act in its provisions on joint venture and not on succession.

"Third Error: Even assuming that there exists jurisdiction to decide this case on the merits and that the provisions concerning joint venture are applicable to this case, the Court erred in determining that there existed a fiduciary relation and the contribution of capital and property to a joint venture by the heirs."

Because they are intimately related we shall discuss both errors jointly.

The primary question to decide in this appeal is whether according to the facts proved the heirs of José Castillo Mercado and his widow constitute as a matter of law a joint venture for the purposes of the Income Tax Act.

The applicable law is § 2(a)(3) of the Income Tax Act of 1925 as amended by Act No. 31 of April 12, 1941. (13 L.P.R.A. § 632.) In its pertinent parts said section provides: "(3) The term 'partnership' includes civil . . . partnerships. . . and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

The above-mentioned act includes "a joint venture for profit" in the term "partnership". Although it does not explain the former concept, yet the case law, in order to establish a difference from a mere community of property, has indicated the circumstances that should concur to constitute a "joint venture for profit". "To constitute a joint adventure the co-owners must, without actually forming a

partnership, contribute their condominia and engage in some specific transaction for profit, they must share in profits and losses; there should exist some fiduciary relationship as between partners so that there may exist a mutual agency in any transaction carried out within the scope of the joint adventure, each one having a voice and vote in the management of the business, although they may agree that one or more of them may act on behalf of the others in the conduct of the enterprise, as is the case in partnerships." *Puig* v. *Tax Court*, 65 P.R.R. 691, 695; *Vías* v. *Tax Court*, 67 P.R.R. 459. In both of these cases we held that since the co-owners in a community of property confined their activity to leasing their condominia and receiving their rent, they did not constitute a joint venture for profit. However, in *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 93 and *Calaf* v. *Tax Court*, 73 P.R.R. 758, we decided that the co-owners had been engaged in a joint venture for profit, based on the requisites fixed in *Puig* v. *Tax Court, supra.*

In the *Calaf* case, two brothers, Jaime and Federico Calaf inherited in 1924, in joint ownership and in equal shares, Central Monserrate and its lands, which property they continued to operate thus, by testamentary will of their father, until the partition in 1943. Every necessary transaction in connection with the business of Central Monserrate and its lands was carried out by and on behalf of both Calaf brothers and their respective conjugal partnerships, and all the securities, mortgages, and liens constituted for the operation of the business were executed by or on behalf of said brothers, being jointly and severally liable for such liens, and securities, together with property held in common as well as uninherited property separately owned and community property. In the operation of said business they devoted additional lands acquired in joint ownership by purchase as well as other uninherited separate property belonging to one of the brothers. In 1940 they ground the sugar cane of other

colonos and substantially modernized the Central investing large sums of money. Between 1940 and 1943 the business was operated exactly as it had been operated since the predecessor's death in 1940, although beginning that year the transactions regarding the operation of the business were made by the General Manager of the Central, on behalf of both brothers and their wives.

■ The plaintiffs allege that in this case there was no voluntary contribution of condominia and no fiduciary relation was established between the co-owners. Their primary contention is that they were obliged to remain in the community because the Secretary of the Treasury had not assessed the inheritance estate nor notified them the inheritance tax, for which reason they could not make the partition.

Irrespective of the legal value that this argument may have, it is evident from the record that, in addition to the inheritance estate of the heirs, the community and separate property of the widow Margarita Pietri were contributed to the business. All the property mentioned formed a common mass devoted to the operation of the different businesses hereinbefore mentioned. There existed only one bank account and the eldest son had authority, granted by all the members of the succession, to administer and manage said property. In his books there appeared the accounts of each one of them, including the corresponding profits in proportion to their respective contributions.[1] Although said profits were

---

[1] Mr. José A. Castillo testified the following:

"Q—Witness, in relation to this notice of deficiency, were any payments made when filing the return of Margarita each year?

"A—Yes, sir.

"Q—And were the corresponding checks sent?

"A—Yes, sir.

"Q—By whom?

"A—By the heirs.

"Q—To pay Margarita's taxes?

"A—Yes, sir.

"Q—Why were not checks made by Margarita but were made by the heirs?

not distributed it was due to the fact that the heirs agreed that their credits be applied to settle part of the deficit of the widow's bill. Witness José A. Castillo testified that for sentimental reasons the members of the Succession had agreed that during the lifetime of the widow they would not dispose, in any way, of the property under his administration.

It is difficult to sustain that there was no voluntary contribution of condominia when it appears, as in this case, that the property of the heirs, held in undivided joint ownership, is joined with the community and separate property of the widow in order to devote them to the operation of the different businesses. In our opinion all the circumstances indicated in the *Puig* case, *supra*, have been established to constitute a joint venture for profit in the light of the tax law. The existence of a fiduciary relation between the members of this joint venture emerges with midday crystal clearness from the proven facts. José A. Castillo assumed the administration of the business on behalf of the others, exactly as in a partnership, by virtue of a general power of

---

"A—Because the bank account is entirely in the name of the heirs.

"Q—Is it just one account?

"A—Yes, sir.

"Q—Why?

"A—Because it's so. It involves a succession and only one bank account.

"Q—But was it specified in the check that it was to pay for Margarita's return?

"A—Yes, sir. (Tr. Ev. 79, 80.)

"Q—And what about the proceeds of the sale of that milk?

"A—It went to the common fund.

"Q—And, didn't your mother receive her share of community property when your father died?

"A—She did not receive them.

"Q—I must then understand that when your father died all the property he left was separate property, not community property.

"A—Of whom?

"Q—Of your father and mother.

"A—My mother had some separate property when my father died.

"Q—What happened to that?

"A—It was left there for her.

"Q—Are they operated jointly with the rest of the heirs' properties?

attorney granted him for that purpose which they repeatedly renewed.[2]

We must inescapably conclude that these two errors have not been committed.

■ In the fourth and last assignment it was alleged that the trial court erred in upholding the penalty notified by the Secretary of the Treasury of 25% of the deficiency on the ground that the income tax return had not been filed.

Plaintiffs alleged that even though they did not file a return as a "partnership", they filed one as "succession" in which they included all taxable income. They cite a line of authorities to maintain that when a return in which the taxable net income is informed has been filed in good faith, the penalty of 25% should not be imposed because of the mere fact that said return was erroneously filed.

We shall not stop to consider the merits of this assignment. It will suffice to state that said penalty was not challenged in the Superior Court. It is thus revealed by the pleadings and incidents of the trial. This question was not raised or argued before the court, nor was the latter given

---

"A—They're all in the same situation. They're all together. According to testamentary provision, aside from her separate property, there is her share.

"Q—Didn't half of the property your father left when he died correspond to your mother as community property?

"A—Yes, sir.

"Q—And what was done with your mother's one-half share?

"A—It was all left there in common.

"Q—And the profits from those properties, did they also go to the common funds of the succession?

"A—Yes, sir.

"Q—And was the property received by your mother, as heir of your father by testamentary provision also left in the common fund? For the common operation?

"A—Yes, sir." (Tr. Ev. 186, 187.)

[2] See, besides the *Puig* case, *supra*, and as example, *Joe Balestrieri & Co.* v. *Commissioner of Internal Revenue*, 177 F.2d 867; *Martter* v. *Byers*, 171 P.2d 101; *Mazzera* v. *Wolf*, 173 P.2d 44; *Hawkins* v. *Travelers Indem. Co.*, 73 So. 2d 348 (La. App.); *Sime* v. *Malouf*, 212 P.2d 946, *reh. denied* 213 P.2d 788; *In re McAnelly's Estate*, 258 P.2d 741; *James* v. *Atlantic & East Carolina R. Co.*, 65 S.E.2d 214; *Carey* v. *Humphries*, 107 N.W.2d 20.

the opportunity to pass upon the same. It is in this appeal before us that the issue is raised for the first time. Thus the plaintiffs deprived respondent from opposing the issue in the trial court as he deemed most convenient. Consequently, we dismiss said assignment of error.

In view of the foregoing the judgment of the Superior Court is affirmed.

Mr. Justice Santana Becerra did not participate herein.