319 F.2d 825
 THE GUILFORD NATIONAL BANK OF GREENSBORO, Administrator
c.t.a., d.b.n. of the Estate of Jesse M. Coble,
Deceased, Plaintiff, Appellant,
v.
SOUTHERN RAILWAY COMPANY, Defendant, Appellee, v. Garland
BATCHELOR, Executorof the Estate of Annie J.
Coble, Deceased, Third-Party Defendant.
 No. 8843.
 United States Court of Appeals Fourth Circuit.
 Argued March 26, 1963.
Decided June 12, 1963.
 
 Welch Jordan, Greensboro, N.C. (Luke Wright, and Jordan, Wright, Henson & Nichols, Greensboro, N.C., on brief), for appellant.
 L. P. McLendon, Jr., and C. T. Leonard, Jr., Greensboro, N.C. (W. T. Joyner, Raleigh, N.C., and McLendon, Brim, Holderness & Brooks, Greensboro, N.C., on brief), for appellee.
 Before SOBELOFF, C.J., and BOREMAN and BRYAN, JJ.
 BOREMAN, Circuit Judge.
 
 
 1
 A collision between a train and a passenger automobile is here involved. This appeal is from the District Court of the United States for the Middle District of North Carolina which entered judgement on a jury verdict in favor of defendant, Southern Railway Company, after denying the motion of the plaintiff to set aside the verdict and grant a new trial. The opinion of the District Court in denying the motion is reported at 211 F.Supp. 1. We think the plaintiff is entitled to an new trial for the reasons hereinafter assigned.
 
 
 2
 This action was instituted by The Guilford National Bank as administrator of the estate of Mr. Jesse M. Coble, deceased, for the wrongful death of its decedent. Mr. Coble was killed in the train-automobile collision while riding as a passenger in an automobile operated at the time by his wife, Annie J. Coble, who was also killed in the accident. Mrs. Coble's personal representative instituted a wrongful death action against the railway and the two actions were consolidated for trial, but Mrs. Coble's representative has not appealed from an adverse verdict and judgment below.
 
 
 3
 The plaintiff assigns as error the action of the District Court in submitting to the jury the issue as to the contributory negligence of Jesse Coble, the issue of joint ownership or control of the automobile by Mr. and Mrs. Coble and in charging the jury that the negligence of Mrs. Coble was imputed to her passenger, Jesse Coble, if the jury found certain facts and further found that Mrs. Coble had knowledge of these facts, even though the automobile was legally titled in her name. In its opinion filed in connection with the denial of the plaintiff's motion to set aside the verdict, the District Court held, as a matter of law, that the negligence of Mrs. Coble constituted an efficient intervening proximate cause of the collision thus insulating the negligence of the railroad. This ruling is also assigned as error.
 
 
 4
 Jesse Coble and his wife, Annie Coble, were instantly killed on the dark, cloudy and rainy night of July 13, 1958, between the hours of nine and ten o'clock, when a Cadillac automobile being operated by Mrs. Coble and in which Jesse was riding as a passenger beside her, was struck and demolished by the locomotive of defendant's passenger train. They had attended a dinner party with friends. After going to a funeral in Danville, Virginia, Mrs. Coble had driven alone in the Cadillac to the home of their hosts and she was joined there by her husband who came with their mutual friends, Mr. and Mrs. Hall. The Cobles were homeward bound at the time of the accident and the Halls were following. There were no other passengers in the Coble automobile; consequently, there was no testimony to indicate whether either of the occupants saw the train approaching or what either of them may have said or done during the last few moments before the impact. The evidence did show, however, that the automobile proceeded in an easterly direction onto the double main line railway tracks at a speed of about 25 miles per hour; that, according to the testimony of Mrs. Hall who was following, the brake lights of the automobile did not flash on. The evidence tended to show that both the air conditioner and radio were in operation in the Coble car at the time of the crash. The automobile crossed the westernmost tracks and was apparently almost across the easternmost tracks when the right front corner of the locomotive of the northbound train, traveling along the easternmost tracks at a speed of 60 to 65 miles per hour, struck the right rear side of the automobile.
 
 
 5
 There was evidence to show that the defendant railway company had permitted the western part of its right of way to become overgrown with heavy brush and small trees and that there was a mound of earth near the southwestern corner of the intersection of the railway crossing and the roadway, thus making it difficult for motorists, approaching the crossing from the west, as were the Cobles, to see the oncoming train to their right. Although there was positive testimony that the train's customary crossing signals were sounded, there was testimony of a negative character (see Johnson v. Atlantic Coast Line R. Co., 205 N.C. 127, 170 S.E. 120 (1933), by witnesses who stated that the train gave no audible signal as it approached the crossing. There was also evidence from which it could be inferred that the oscillating headlight of the locomotive was extinguished for a brief period of time shortly before the train reached the crossing. Despite the contentions of the railway company to the contrary, there was ample evidence to support the special finding of the jury that the railway company was guilty of negligence which was a proximate cause of the collision and the resulting deaths. However, the jury found also that both Mr. and Mrs. Coble were guilty of contributory negligence and that the defendant was not liable for the death of either.
 
 
 6
 There was absolutely no direct evidence adduced with respect to the action or inaction of Jesse Coble immediately prior to the collision. Based purely on the circumstances that Jesse was seated in the right front seat of the automobile, and that there was no apparent attempt by the driver to stop the car, the court submitted to the jury the issue of Jesse's independent contributory negligence, reasoning that having been seated in such a superior location for observing and hearing, one or two feet closer than Mrs. Coble to the approaching train, Jesse either saw or should have seen the train; that if he had warned his wife of the train's approach and told her to stop, 'it is inconceivable that she would not have made at least an effort to stop'; and that since the brake light of the car did not come on, she had made no such effort. Such deductive reasoning is merely speculative, a process in which juries may not be allowed to indulge. Parker v. Wilson, 247 N.C. 47, 100 S.E.2d 258 (1957); Sowers v. Marley, 235 N.C. 607, 70 S.E.2d 670 (1952). It is conceivable that Mrs. Coble might not have made an effort to stop the car even if she had been warned by her husband. Since the car was nearly across the tracks when it was struck, she might just as reasonably have determined to accelerate in an attempt to clear the tracks rather than to slow down or stop and risk the greater danger that the train would strike the car broadside. She may just as reasonably have been frozen by fear or misjudged the speed of the train or its distance from the crossing, or in her excitement she may have missed the brake pedal with her foot. Therefore, the circumstances are as consistent with Jesse's seeing the train and warning his wife as they are with failing to do so. To infer that, since the brake light did not come on, the driver attempted no evasive action and that, therefore, she was not warned by the passenger is to base an inference upon an inference rather than upon an established fact. See Parker v. Wilson, supra. There was, therefore, no evidence to support a jury finding of independent contributory negligence on the part of Jesse, and it was error to submit that issue for jury consideration. See Johnson v. Atlantic Coast Line R. Co., supra.
 
 
 7
 On the issue of imputation of Mrs. Coble's negligence to her husband passenger, based upon the theory of joint ownership or control of the automobile, the evidence showed that Jesse Coble had purchased the car and presented it to his wife as a Christmas gift in 1955; that thereafter she used it substantially as she pleased although at times for the purpose of running errands for her husband in connection with his business, for which occasional services she received a salary from the business; that the title to the car was registered in Mrs. Coble's name; and that Jesse Coble had a Buick automobile of his own which he generally used. The railway contends that despite these rather overwhelming circumstances tending to prove that the Cadillac was the sole and exclusive property of Mrs. Coble, Jesse Coble was at least a part owner in view of the further evidence tending to show that Jesse purchased the car by trading in a 1951 Cadillac which was carried on the books of his business, that he gave a business check for the rest of the down payment and financed the balance by a conditional sale contract on which he made the payments; that he paid the costs of the maintenance and operation of the car and used it occasionally himself on business trips; and that the car was treated, for tax purposes, as an asset of Jesse Coble's business, it being reflected in the Cobles' state and federal tax returns as an item subject to depreciation for business purposes.
 
 
 8
 On this evidence the trial court at first charged that it was for the jury to determine whether or not Jesse was in fact a part owner and exercised part control over the car and that if it found in the affirmative, any negligence of Mrs. Coble would be imputable to Jesse. However, thereafter, immediately before the jury finally retired to resume deliberations after having appeared for further instructions, the court instructed the jury that if it found from the greater weight of the evidence that the car was titled in Mrs. Coble's name, was carried as an asset on the books of Jesse's business, was depreciated as such an asset on the Cobles' state and federal tax returns and Mrs. Coble was aware of its treatment as such an asset, then it would be the 'duty' of the jury to find that Jesse had some control or right of control over the car and that the negligence, if any, of Mrs. Coble was to be imputed to Jesse.
 
 
 9
 We agree with the plaintiff that the latter instruction was tantamount to a directed verdict, calculated to insure a finding for the defendant on the issue of imputed negligence. We are of the opinion that the giving of such an instruction was error, prejudicial in character. Although, as urged by the defendant, only a taxpayer who has a depreciable interest in property may take the depreciation deduction, certainly the fact that a claim is made for such deduction does not vest the ownership of a car, actually owned by someone else, in the one claiming such deduction; and this is the precise holding of the decision upon which the railway relies. Reisinger v. Commissioner of Internal Revenue, 144 F.2d 475 (2d Cir. 1944).
 
 
 10
 We reach the further conclusion that the issue of imputed negligence should not have been submitted to the jury at all on the evidence in this record. Proof of legal title to an automobile makes at least a prima facie showing of the ownership in the one in whose name the title is registered. N.C.Gen.States., 20-71.1 (Michie 1961 Supp.). The fact that Jesse made the deferred payments on the purchase price of the car is consistent with the evidence that he gave the car to his wife as a Christmas present. Had she made such payments herself, it would not have been a gift. Furthermore, the circumstance that he paid the expenses incident to maintaining the car is not evidence of any retention of ownership by Jesse in view of the fact that the legal owner was his own wife. This is simply an ordinary incidence of the marital relationship, as is the fact that Jesse may have made free use of the car on other occasions. See Shoe v. Hood, 251 N.C. 719, 112 S.E.2d 543 (1960). Finally, the evidence respecting the treatment of the car for tax purposes as a depreciable asset of Jesse's business enterprise, although it may have been an unjustified means of avoiding or reducing tax liability, cannot, it seems to us, be used as evidence having probative value as to the true ownership of the car. We have neither found nor have we been cited any authority ot the contrary.
 
 
 11
 The railway company further attempts to justify the submission to the jury of the issue of imputed negligence upon the theory that Mr. and Mrs. Coble were engaged in a joint enterprise. The evidence shows that they were, at the time of the accident, returning to their home from a social affair at the home of friends. It seems to be well settled that under such circumstances a joint enterprise cannot be held to exist. A common purpose in riding together, whatever may be the destination, is not enough. Jernigan v. Jernigan, 207 N.C. 831, 178 S.E. 587 (1935); Johnson v. Atlantic Coast Line R. Co., supra; Charnock v. Reusing Light & Refrigerating Co., 202 N.C. 105, 161 S.E. 707 (1932); Virginia Transit Co. v. Simmons, 198 Va. 122, 92 S.E.2d 291 (1956). See James v. Atlantic & East Carolina R. Co., 233 N.C. 591, 65 S.E.2d 214 (1951).
 
 
 12
 We cannot agree with the conclusion of the District Court, as stated in its written opinion, that the negligence of Mrs. Coble was 'a new, independent and efficient cause which broke the continuity of the original wrong,' thus 'insulating' the negligence of the railway company. As stated in Harton v. Forest City Telephone Co., 141 N.C. 455, 54 S.E. 299, 302-303 (1906),
 
 
 13
 'It will be seen that the test laid down by all of these writers, by which to determine whether the intervening act of an intelligent agent which has become the efficient cause of an injury, shall be considered a new and independent cause, breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected. If the intervening act was of that character, then the sequence of events put in motion by the primary wrong is not broken, and this may still be held the proximate cause of the injury. Numerous and well-considered decisions by courts of the highest authority show that this is a correct statement of the doctrine.
 
 
 14
 '* * * We think it the more correct rule that, except in cases so clear that there can be no two opinions among men of fair minds, the question should be left to the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a crsult of his own negligent act * * *.'
 
 
 15
 In Henderson v. Powell, 221 N.C. 239, 19 S.E.2d 876 (1942), the principles enunciated in Harton were applied to actions brought on behalf of automobile guest passengers arising out of an automobile-train collision. There the court noted the 'reciprocal, interrelated, and immediate' character of the duties imposed on the motorist and the railroad when a zone of danger is created by simultaneous approach to a rail-highway intersection. It was emphasized that an intervening cause must entirely supersede the original negligence of a defendant in order to insulate him from liability to an innocent third party who is injured thereby. 'Foreseeability' was held to be the test to determine whether the intervening negligent act of another would supersede the negligence of the first actor or merely become a concurrent cause of plaintiff's harm. The judgments of nonsuit were reversed on the ground, inter alia, that the conduct of the driver in negligently crossing the tracks was not 'of such an extraordinary character as to be beyond the limits of foreseeability.'
 
 
 16
 In Rattley v. Powell, 233 N.C. 134, 25 S.E.2d 448 (1943), which was the style of the appeal of the Henderson case, supra, after jury trial which followed the first opinion, the court, in reversing for errors in instructions, elaborated on the application of the foreseeability test:
 
 
 17
 'The test is not to be found merely in the degree of negligence of the intervening agency, but in its character-- whether it is of such an extraordinary nature as to be unforeseeable. A person is bount to foresee only those consequences that naturally and probably flow from his negligence; but caution must be observed in the application of this principle also, since the failure to foresee the exact nature of the occurrence caused by his negligence will not excuse him if it could be reasonably foreseen that injury to some person might occur through an event of that character.
 
 
 18
 '* * * If upon the application of these principles, the intervening act or conduct is found to be reasonably foreseeable as a consequence of the original negligence, it will not serve the purpose of insulation.' 25 S.E.2d at 450.
 
 
 19
 From the record it is apparent that any engligence of Mrs. Coble should not be determined, as a matter of law, so extraordinary in character as to be unforeseeable by the railway company. Rather, it was a permissible inference that her actions were reasonably foreseeable in the light of evidence tending to show operation of the train in the darkness, at a high rate of speed, without proper lights and signals, upon and over a grade crossing where the approaching motorist's view of the tracks had been permitted to become obstructed. From evidence of these facts the jury could have found that the railway company was guilty of negligence which was a proximate and concurrent cause of the accident. Therefore, the issues of negligence of the railway company, the foreseeability of Mrs. Coble's action in driving upon the tracks, and of proximate cause were for jury determination under appropriate instructions. See Watters v. Parrish, 252 N.C. 787, 115 S.E.2d 1, 7-8 (1960); Bryant v. Woodlief, 252 N.C. 488, 114 S.E.2d 241, 244-245, 81 A.L.R.2d 939 (1960); Hall v. Coble Dairies, 234 N.C. 206, 76 S.E.2d 63, 29 A.L.R.2d 682 (1951); Rattley v. Powell, supra; Henderson v. Powell, supra; Gold v. Kiker, 216 N.C. 511, 5 S.E.2d 548 (1939); Quinn v. Atlantic & Yadkin Ry. Co., 213 N.C. 48, 195 S.E. 85 (1938); Johnson v. Atlantic Coast Line R. Co., supra.
 
 
 20
 Reversed and remanded for a new trial.