JOSEPH BLAIR SLAUGHTER, PLAINTIFF v. WILLIAM M. SLAUGHTER AND LEROY S. VEASEY, DEFENDANTS

No. 8810SC704

(Filed 16 May 1989)

**Joint Ventures § 1— pond dredged by neighbors—joint venture— negligence of backhoe operator imputed to neighbor**

In an action to recover for injuries sustained by plaintiff when he was struck by a backhoe operated by one defendant, the trial court erred in allowing the other defendant's motion for judgment n.o.v. on the ground that defendants were not engaged in a joint enterprise as a matter of law and therefore the negligence of defendant backhoe operator could not be imputed to defendant landowner, since the evidence tended to show that defendants, as neighbors and brothers-in-law, agreed to pool their resources, one supplying the fuel and the other operating a backhoe, in order to accomplish the mutually beneficial task of dredging a pond located between their houses.

APPEAL by plaintiff from Judgment of *Judge Donald W. Stephens* entered 22 March 1988 in WAKE County Superior Court. Heard in the Court of Appeals 26 January 1989.

*Burns, Day & Presnell, P.A., by Lacy M. Presnell, III, and Daniel C. Higgins, for plaintiff appellant.*

*Broughton, Wilkins & Webb, P.A., by Charles P. Wilkins, for defendant appellee Leroy S. Veasey.*

COZORT, Judge.

Plaintiff appeals from an order of the trial court allowing defendant Veasey's motion for judgment notwithstanding the verdict on the ground that defendants were not engaged in a joint enterprise as a matter of law and therefore the negligence of defendant Slaughter could not be imputed to defendant Veasey. We reverse.

Defendants Slaughter and Veasey are brothers-in-law. Plaintiff Slaughter is defendant Slaughter's son and defendant Veasey's nephew. At all times pertinent to this action, defendants owned adjoining tracts of land on which there was a two-acre pond located approximately midway between their residences and situated on

Veasey's land. Veasey owned approximately 135 acres of farmland and prior to 1978 had used the pond for irrigation purposes. Since 1978 he had leased an allotment for tobacco and had not used the pond for crop irrigation. However, both the Veaseys and the Slaughters used the pond to irrigate their family gardens and yards, and both families used the pond for sport fishing. By 1985, the tobacco allotment lease was soon to expire, and Veasey planned to resume using the pond to irrigate his farm.

Sometime prior to 1985 the pond had become filled with soil due to erosion from surrounding farms, and was too shallow for irrigation or fishing purposes and had become a breeding ground for mosquitoes. On a Sunday afternoon in 1984 or 1985, as defendants were walking over their property and talking, Veasey mentioned to his brother-in-law that he intended to have the pond dug out or dredged as soon as he could acquire the funds. Defendant Slaughter then suggested that he borrow the hydraulic excavator, a type of backhoe, that he drove when he worked for his nephew, who owned a lumber company. Defendant Slaughter told Veasey that he could get the machine free of charge and work in the evenings after work and in his spare time. Veasey agreed to supply the fuel and stated that he was willing to pay for the dredging, but no specific amount was mentioned by either defendant. Veasey testified at trial that he did not expect his brother-in-law to do the work for free and that he would have been glad to pay whatever he charged. Defendant Slaughter testified that Veasey did offer to compensate him but that the discussion about money was a "casual mentioning," and that he had responded, "If it took too long, then we will talk about it." He also testified to having said that "we might have a few small minor repairs. If we do, we will talk about it and if it's too much, we will split it . . . ."

Several months later, Slaughter had the backhoe transported to Veasey's property and began dredging the pond. Within a day or two of beginning the dredging, Veasey rode on the backhoe with Slaughter for thirty or forty minutes and Slaughter showed him how he was trying to fill the muskrat holes that were causing problems on the dam. At that time Veasey said that he thought that digging in the area of the dam "might undermine the foundation," so Slaughter moved the machine and worked around the pond away from the dam. Veasey gave no further directions regarding the dredging.

## SLAUGHTER v. SLAUGHTER

[93 N.C. App. 717 (1989)]

On 1 August 1985, after defendant Slaughter had been dredging the pond for a couple of months, plaintiff went down to the pond where his father was working and warned him of an approaching storm. Defendant Veasey was not present. After his father motioned for him to come up on the machine, plaintiff rode on the backhoe for a few minutes, then debarked and began walking back to the Slaughter house. After checking to see if his son was out of range, defendant Slaughter swung the boom of the machine around to leave the pond. At that time the machine lunged unexpectedly and the boom struck plaintiff, causing serious injury to his foot. As a result of that injury, plaintiff's left leg was amputated below the knee.

Defendant Slaughter performed no more work on the pond after the accident. He never asked for a bill nor received any compensation for his services.

After receiving testimony from the parties, the trial court submitted the following issues to the jury, which were answered as indicated:

1. Were Leroy S. Veasey and William Maynard Slaughter engaged in a joint enterprise on August 1, 1985 whereby Mr. Veasey was responsible for any negligent acts of Mr. Slaughter committed in the furtherance of such joint enterprise?

Answer: Yes.

2. Was Joseph Blair Slaughter injured by the negligence of William M. Slaughter?

Answer: Yes.

3. Did Joseph Blair Slaughter cause or contribute to his injury by his own negligence?

Answer: No.

4. What amount of damages, if any, is Joseph Blair Slaughter entitled to recover?

Answer: $150,000.00.

Upon motion of defendant Veasey for judgment notwithstanding the verdict, the trial court allowed the motion, set aside the jury verdict on the first issue of joint enterprise, and dismissed the action as to defendant Veasey. Plaintiff appeals. We reverse.

SLAUGHTER v. SLAUGHTER

[93 N.C. App. 717 (1989)]

In ruling upon a motion for judgment notwithstanding the verdict, the trial court may grant the motion only if the evidence is insufficient to justify a verdict for the plaintiff as a matter of law. *Murrow v. Daniels*, 321 N.C. 494, 501-02, 364 S.E. 2d 392, 397 (1988). Like the trial court, on appeal we must consider the evidence in the light most favorable to the non-movant, taking all evidence supporting the non-movant's claims as true, and resolving all inconsistencies and conflicts in favor of the non-moving party. *Id.*

A joint enterprise is an alliance between two or more people in pursuit of a common purpose such that negligence of one participant may be imputed to another. *McAdams v. Blue*, 3 N.C. App. 169, 173, 164 S.E. 2d 490, 493 (1968). Parties may be said to be engaged in a joint enterprise when there is a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movement of each other with respect thereto. *James v. Atlantic & E. Carolina R.R. Co.*, 233 N.C. 591, 598, 65 S.E. 2d 214, 219 (1951). We believe the evidence supports the jury's conclusion that the parties were engaged in a joint enterprise. We therefore reverse the order of the trial court allowing defendant Veasey's motion for judgment notwithstanding the verdict.

Ample evidence supports a finding of community of interest in the purpose of the undertaking. Both of the defendants wanted to resume using the pond for fishing and irrigation. The fact that the mosquitoes were more troublesome to the Slaughter family or that Veasey's primary motivation was to supply irrigation for his farm is not inconsistent with a finding that the parties were motivated by a common purpose. Taken in the light most favorable to plaintiff, the evidence shows that defendant Slaughter was not primarily motivated by any compensation that he might receive for his services.

Veasey contends, however, that even if there were a community of interest in the purpose of the undertaking, defendants did not have an equal right to govern the movements and conduct of each other with respect to that undertaking. He argues that the dredging of the pond required no action on his part, that he did not know how to operate the backhoe, and that, as the owner of the pond, he could have halted the enterprise at any time and ordered his brother-in-law to discontinue the dredging. We are not persuaded by these arguments.

The fact that the undertaking at hand could be accomplished only through use of the backhoe, which only Slaughter had the expertise and ability to operate, does not absolve Veasey of responsibility for his agent's negligent act committed while carrying out their enterprise. The control required for imputing negligence under a joint enterprise theory is not actual physical control, but the *legal right* to control the conduct of the other with respect to the prosecution of the common purpose. *James*, 233 N.C. at 598, 65 S.E. 2d at 219. Furthermore, that Veasey could have called off the enterprise does not affect his legal responsibility while that enterprise was ongoing.

Taken in the light most favorable to plaintiff, the evidence shows that defendants, as neighbors and brothers-in-law, agreed to pool their resources—one supplying the fuel and the other operating the backhoe—in order to accomplish the mutually beneficial task of dredging the pond. Therefore, we reverse the order of the trial court granting judgment notwithstanding the verdict to defendant Veasey and remand for entry of judgment in accordance with the jury verdict.

Reversed and remanded.

Judges PHILLIPS and GREENE concur.