JERRY FLORENCE JOHNSON, ADMINISTRATRIX OF LUCIUS D. JOHNSON DECEASED, v. THE ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 12 July, 1933.)

**1. Death B d—**

In an action for wrongful death the burden is on plaintiff to establish by adequate evidence the death of the intestate, the defendant's negligence, and proximate cause.

**2. Railroads D b—Duty of railroad company to ring bell, sound whistle and keep lookout at populous crossing.**

It is the duty of a railroad company to exercise due care to keep a careful lookout at a populous grade crossing, and to warn of the approach of its trains thereto by ringing the bell or sounding the whistle, or both, the degree of vigilance required being in proportion to the apparent danger.

**3. Same—**

The violation of a town ordinance regulating the speed of trains within its limits is negligence *per se,* the ordinance being intended to prevent injury to person and property.

4. **Same——Evidence of causal relation between railroad's negligence at crossing and injury held sufficient to be submitted to jury.**

In order for negligence to be actionable it is necessary that it should be the proximate cause of the injury in suit, and where there is any sufficient evidence of causal relation the question is for the jury, otherwise it is for the court, and the evidence in this case tending to show that plaintiff's intestate was riding in a car driven by the owner, that the car stopped at a crossing within the corporate limits of a town while a southbound train passed on one track and that the driver then went upon the tracks and that the rear wheel of the car was struck by a northbound train passing on a second track, together with other evidence, *is held* sufficient evidence of the causal relation between defendant's negligence in exceeding the speed limit prescribed by the town ordinance and its negligence in failing to give warning of the approach of its train to the populous crossing by ringing its bell or sounding its whistle.

5. **Evidence N c——Negative testimony held to raise issue for jury although another witness gave positive testimony to contrary.**

Where one witness testifies that he heard defendant's train sound its whistle, and another witness testifies that he was in a position to have heard such signal had it been given, and did not hear the whistle, the affirmative testimony is ordinarily more reliable than the negative, but such testimony is some evidence that the whistle was not blown.

6. **Automobiles C j——Negligence of driver will not be imputed to guest unless guest is in common possession of car with driver.**

In an action against a railroad company for the wrongful death of plaintiff's intestate, killed in a collision between defendant's train and the automobile in which the intestate was riding as a guest, the plaintiff is entitled to recover if the negligence of the railroad company was the proximate cause of the collision, or one of the proximate causes thereof, if the intestate was not guilty of contributory negligence, and the negligence of the driver of the car will not be imputed to the guest unless he had such joint control over the car as to have it in common possession with the driver.

7. **Same——Defendant has burden of proving that guest in car failed to use due care for his own safety.**

The burden is on defendant to prove the contributory negligence of a guest riding in an automobile in an action by the guest's administrator to recover for his wrongful death, and where plaintiff's evidence fails to show that the guest did not warn the driver of the impending danger of the collision resulting in the injury, or did not protest or take any action to prevent the collision, and fails to show that the guest saw defendant's approaching train and that the driver did not see it, an instruction to answer the issue of contributory negligence in the negative is correct.

APPEAL by defendant from *Shaw, Emergency Judge,* at August Term, 1932, of HALIFAX. No error.

This is an action to recover damages for the death of the plaintiff's intestate alleged to have been caused by the negligence of the defendant.

In the afternoon of 15 January, 1932, between six and seven o'clock, an automobile owned and driven by Walter G. Young, in which the plaintiff's intestate was riding as a guest, was struck by an engine of the defendant at a grade railroad crossing in the town of Enfield, and both occupants of the car were killed.

The automobile was a one-seated coupe, the driver sitting at the wheel on the left and the plaintiff's intestate on the right. At the place of collision the defendant maintains two contiguous railroad tracks extending north and south, southbound trains using the west track and northbound trains using the east track. About 75 yards south of the crossing there is a switch or spur track on which some cars were standing at a distance of 70, 80, or 90 yards from the scene of the accident.

Burnette Avenue, 27 feet wide, crosses the two railroad tracks and runs east and west. It is used by the public; probably 100 or 150 automobiles and other vehicles pass over the crossing during the day and night. On each side of Burnette Avenue is a sidewalk about four feet and a half in width. On the west side of the crossing an extension of Main Street runs north and south, parallel with the railroad tracks, the distance from the sidewalk to the southbound track being about 40 feet. It is 6 feet from the southbound to the northbound track.

Only two witnesses testified to the material facts relating to the collision, Ben Dunn and Stephen Sneed. The former said: "I was standing on the east side of the track about 35 or 40 yards from the crossing. . . . It was about good dark. One train had passed up to the next crossing and one was coming. . . . The southbound train had passed 85 yards south of the crossing when the northbound engine and caboose came together. I was not looking to the west when the trains passed. I was just noticing the trains and looking at them when coming down the sidewalk, and heard the northbound man blow a crossing blow a good big block away. . . . Just as soon as the southbound train passed, I looked and saw the automobile easing toward the track, the northbound train was about 85 yards. This train was running about 40 miles per hour. I did not hear a bell, did not hear anything but a crossing blow a block away, about 125 or 150 yards. When the northbound train blew, the caboose of the southbound man had not gotten quite in contact with the engine of the northbound man when it blew for the crossing. I do not think the northbound train slowed down at all before the collision. The train hit the right-hand rear wheel of the automobile, twisting it around and turned it over twice, and of the two men in it, one was killed instantly; one was knocked out and the other was hanging. The train ran one and one-half blocks before it stopped, about 125 yards. The brakes were put on by the engineer as soon as he hit the men. There was no electric signal or electric gong, only a cross-

arm to indicate there was a crossing, just like you see at any other crossing. When I saw the automobile approaching the crossing, it was running 8 or 10, not over 10 miles an hour, very slowly. The automobile was 46 feet from the northbound track on which it was struck when I first saw it. . . . Between the time I saw the northbound engine pass the southbound caboose and when I saw the car easing into Main Street, I walked 15 yards. When I saw the train coming and the automobile approaching that street crossing, going across Main Street, I hollered at the man: 'Hey, there's a train coming.' I don't think he heard me as he did not regard what I said. The door of the car was not open; no one attempted to get out; its speed did not slacken or increase and it did not swerve to the right or left. The headlight of the northbound train was burning brightly, and the whistle sounded for the regular crossing blow for Burnette Avenue where they usually blow. When I hollered at the driver of the car, it was moving along. There was no other noise in the immediate vicinity besides the sound of my voice and the noise of the train which I reckon was a 40 or 45 car freight train. I did not see anybody in the car at the time I hollered to them, or at the time I was approaching the crossing, nudge the driver; nor did I see them raise their hands or point to the train."

Stephen Sneed was on the east side of the railroad, intending to cross the track in his car when he saw the approaching train. He testified: "When I did look at the crossing I saw this car on the other side coming towards me. When I took my eyes off the train and looked back at the crossing, the man was right between the four rails coming towards me when I looked the second time. At that time the northbound train was up the track from the automobile as far as from here to the back door (of the courthouse). I looked back again at the train and it was easing up on it, and . . . it struck the back of the car at the fender, right at the wheel. It knocked it around and turned it over, it seemed to me, twice. . . . It was dark where the car was . . . the brakes were put on after the train hit the car. I could not see that the train slowed down any before it hit the car . . . it was running around 35 miles an hour or perhaps more. I did not hear any bell or whistle and there was not any electrical signal or watchman to warn anybody at the crossing. I stopped on the other side; was not directly in the street. . . . I could have heard whistle if it had blowed; my engine could not keep enough fuss to keep me from hearing it. I heard the train coming, saw the headlight, and stopped my car for it to pass. . . . When I first looked the car was on the concrete, had not entered the track. I judge the train was 75 feet or more coming to the crossing. . . . There was not a thing between the car and the train to keep the driver from seeing the train. When he was back ten feet further, there

was nothing between him and the train to keep him from seeing the train . . . he could have seen that headlight."

The plaintiff offered in evidence an ordinance of the town of Enfield making it unlawful for any railroad or railway company to run its trains through the corporate limits of the town at a greater rate of speed than 15 miles an hour, except between the hours of 10 p.m. and 6 a.m. The defendant did not introduce any witnesses.

The usual issues of negligence, contributory negligence, and damages were answered against the defendant. Judgment for plaintiff; appeal by defendant upon assigned error.

*George C. Green and Thos. W. Ruffin for plaintiff.*
*Thos. W. Davis, Dunn & Johnson and Spruill & Spruill for defendant.*

ADAMS, J. The defendant suggests that two inquiries with their necessary implications are sufficient to present the merits of the appeal:

1. Did the court err in overruling the defendant's motion to nonsuit the action at the close of the evidence?

2. If the demurrer to the evidence was properly overruled, did the court err in peremptorily instructing the jury to answer the issue of contributory negligence in the negative?

The first inquiry raises the two questions whether there is evidence of the defendant's actionable negligence and whether there is evidence of such contributory negligence on the part of the plaintiff's intestate as will bar the recovery of damages; the other has reference to the court's withholding from the jury the question of negligence on the part of the intestate.

The trial court restricted the consideration of the jury to three alleged acts of negligence: (a) the defendant's failure to give timely warning of the incoming train as it approached the crossing; (b) its failure to keep a proper lookout; (c) its operation of the train within the corporate limits of the town at a rate of speed in excess of fifteen miles an hour.

It was incumbent upon the plaintiff to establish by adequate evidence the actionable negligence of the defendant—the death of the intestate, the defendant's negligence, and the proximate causal relation; and the sufficiency of the evidence in these respects must be determined by appropriate principles of law.

As the crossing at which the collision occurred is habitually used it was the duty of the defendant in the exercise of reasonable care to keep a careful lookout for danger and to give timely notice or warning of the approach of the train by sounding the whistle or by ringing the bell, or by doing both if necessary, the degree of vigilance being in proportion to the apparent danger. Failure to exercise due care in these respects

would constitute negligence which if the proximate cause of the intestate's death would be actionable. *Collett v. R. R.,* 198 N. C., 760; *Redmon v. R. R.,* 195 N. C., 764; *Riggsbee v. R. R.,* 190 N. C., 231; *Costin v. Power Co.,* 181 N. C., 196; *Bagwell v. R. R.,* 167 N. C., 611; *Johnson v. R. R.,* 163 N. C., 431; *Edwards v. R. R.,* 132 N. C., 100.

The ordinance that the plaintiff offered in evidence was obviously intended to prevent injury to person and property and its violation by the defendant was negligence *per se. King v. Pope,* 202 N. C., 554; *S. v. Durham,* 201 N. C., 724; *Lancaster v. Coach Co.,* 198 N. C., 107; *Burke v. Coach Co., ibid.,* 8; *Ledbetter v. English,* 166 N. C., 125. Of course the failure to observe the ordinance, similarly to the failure to keep a lookout or to give notice that the train was approaching, would not make a case of actionable negligence in the absence of evidence tending to show that it was the proximate cause of the intestate's death. If there is evidence in support of the alleged proximate causal result the question was properly submitted to the jury; if not, it should have been determined as a question of law. *Albritton v. Hill,* 190 N. C., 429. The defendant insists that it was not negligent in any view but, if it was, that there is no sufficient causal connection between its negligent act and the death of the intestate. We are of opinion that there is evidence of such causal relation, and that it differs materially from the evidence in *Hendrix v. R. R.,* 198 N. C., 142 and *Thompson v. R. R.,* 195 N. C., 663.

Only two witnesses testified as to the signals. Ben Dunn said, "I heard the northbound man blow a crossing blow a good big block away . . . I did not hear a bell; did not hear anything but a crossing blow a block away, about 125 or 150 yards." Sneed testified, "When I got within 25 or 30 feet of the track I stopped my automobile . . . . I did not hear any bell or whistle . . . my engine was running until the train got close to me and I cut my engine off then. I could have heard the whistle if it had blown; my engine could not keep enough fuss to keep me from hearing it."

These two witnesses testified in behalf of the plaintiff. The testimony of one is affirmative and that of the other is negative. While the affirmative testimony of a credible witness is ordinarily more reliable than the negative testimony of an equally credible witness, still testimony that a person near by who could have heard and did not hear the sounding of the whistle is some evidence that no such signal was given. *Earwood v. R. R.,* 192 N. C., 27; *Perry v. R. R.,* 180 N. C., 290; *Goff v. R. R.,* 179 N. C., 219. The charge pointed out the distinction between these two types of evidence and this Court cannot decide as an inference of law which of the two the jury accepted. If the defendant did not give the signal it would not be unreasonable to conclude that its failure in this respect was the proximate cause or one of the proximate causes of the collision.

The speed of the train, also, may have been considered as an element or cause contributing to the result. The engine struck the right-hand rear wheel of the automobile, not having "slowed down at all" prior to the impact. There is evidence from which the jury may reasonably have inferred that if the defendant had observed the ordinance and had reduced the speed from thirty-five or forty to fifteen miles an hour the car would have emerged from the zone of danger and the collision would not have occurred.

The trial court clearly instructed the jury in regard to all the elements essential to an affirmative answer to the first issue—the sole negligence of the defendant, the sole negligence of the driver of the car, the concurrent negligence of both, and the necessity of causal relation between the defendant's negligence and intestate's death; and as to this issue we find no error.

In reference to the second issue the defendant contends that according to the entire evidence the plaintiff's intestate was himself guilty of contributory negligence which defeats the right of recovery.

The intestate was not the owner of the car; he had no control over it; and there is no evidence that he and the driver were engaged in a joint enterprise. They were engaged in the common enterprise of riding but they had no such joint control and direction over the automobile as to have it in their common possession. *Albritton v. Hill, supra.*

We have held that where two proximate causes contribute to an injury the defendant is liable if his negligent act brought about one of such causes and that negligence on the part of the driver of a car will not ordinarily be attributed to another occupant. *Smith v. R. R.*, 200 N. C., 177. These propositions were definitely stated in the charge; but they do not imply that "another occupant" of a car may not be negligent. In *Earwood v. R. R., supra,* it was said that the negligence of the driver was not imputable to a guest because there was no evidence of a joint enterprise or that the guest had any control of the car or had failed to perform any duty imposed upon him by law. In *Smith v. R. R., supra,* the duty imposed upon the guest is stated as follows: "Conceding it was his duty, although merely a passenger in the automobile, with no control over the driver, to keep a reasonable lookout for engines and trains on defendant's track, as the automobile approached the crossing, and to warn the driver of the impending danger of a collision, if it was apparent to him that the driver had not seen the engine and tender or having seen them, did not appreciate the danger of a collision, it cannot be held that all the evidence upon this aspect of the case showed that Boyd Smith failed to perform this duty, and that such failure was a proximate cause of the collision resulting in his death. If he saw, or by the exercise of reasonable care, could have seen no more than the driver and his fellow-passenger, who were under a like

duty, saw, it was for the jury and not for the court to determine whether or not, under all the circumstances, he contributed to his death by his own negligence. If when he saw, or by the exercise of reasonable care, could have seen that an engine and tender on defendant's track was approaching the crossing, he also saw that the driver had seen the approaching engine and tender, and with full appreciation of the impending danger, was doing all in his power, under the circumstances, to avoid a collision, it was for the jury and not for the court to say whether or not his failure to speak to the driver and warn him of the danger was negligence. It is a matter of common knowledge to those who ride in automobiles—certainly to those who drive them—that 'backseat' driving often confuses a driver, and more often than otherwise, prevents him .from avoiding dangers encountered on the road." 200 N. C., 181.

The defendant had the burden of showing the contributory negligence of the intestate as a proximate cause of the injury and death—that is, that the intestate failed to exercise ordinary care and that his death was the proximate result of his negligence. In applying to the evidence the principle stated in *Smith v. R. R., supra,* the defendant says: "The guest not only did not warn the driver or make any protest, but did not himself take any steps to avoid the injury."

We are unable to concur with the defendant in this construction of the evidence. A careful inspection of the testimony fails to disclose any proof that the guest did not warn the driver or make any protest or take any action to prevent the collision. It fails to show, as stated in the *Smith case,* that it was apparent to the intestate that the driver did not see the train and did not appreciate the danger. It was probably upon this theory that the court held there was no sufficient evidence of contributory negligence.

After due consideration of all the exceptions appearing in the defendant's brief we find

No error.