JOHNNIE HENDERSON, BY HIS NEXT FRIEND, H. H. UTLEY (No. 457), and
ANNIE GLENN RATTLEY, ADMINISTRATRIX OF SYLVESTER RATTLEY, DECEASED (No. 459), v. L. R. POWELL, JR., AND HENRY W. ANDERSON, RECEIVERS OF SEABOARD AIR LINE RAILWAY COMPANY, AND T. LACY WILLIAMS, ADMINISTRATOR OF JOHN VAUGHAN, DECEASED.

(Filed 29 April, 1942.)

1. Negligence § 7—

The fact that the injury would not have occurred except for the negligent act of a responsible third party does not in itself exculpate defendant

from liability, but it is necessary that there be a total want of causal connection between defendant's negligence and the injury, or that the intervening negligence of the third party and the resultant injury could not have been reasonably anticipated by defendant.

**2. Railroads § 9—**

The driver of a car approaching a railroad grade crossing owes the duty to the passengers in his car to exercise due care under the circumstances, and the railroad company is under like duty, and the duty of each is reciprocal, interrelated, and immediate.

**3. Same—In regard to liability to passengers in car, negligence of railroad company held not insulated by negligence of driver.**

Two passengers in an automobile were injured in a crossing accident, one of them fatally. The surviving passenger and the administratrix of the deceased passenger instituted these actions against the railroad company. There was evidence tending to show negligence on the part of the driver of the car in failing to use due care in approaching the crossing, and negligence on the part of the railroad company in operating its train at an unlawful speed without signals or warning of its approach, over the crossing which was located in a populous town and which did not have automatic signals and at which no watchman was stationed at night. The accident occurred at night. *Held:* The railroad company's motion to nonsuit on the ground that the negligence of the driver of the car was intervening negligence insulating its negligence because the accident would not have occurred except for the negligence of the driver of the car, was properly overruled, since the negligence of the driver of the car could have been reasonably anticipated, and the negligence of the railroad company was active and continued up to the moment of impact.

**4. Same: Automobiles § 20a—**

Evidence in this case *held* not to disclose contributory negligence as a matter of law on part of passengers in a car in permitting the driver to approach and traverse a grade crossing in a negligent manner with the windows of the car up so as to interfere with hearing the approaching train, and in failing to see the train and advise the driver of its approach.

APPEALS by plaintiffs, respectively, from *Thompson, J.,* at November Term, 1941, of FRANKLIN. On both appeals, reversed.

The plaintiffs brought separate actions to recover damages for injuries sustained in a crossing collision through the alleged negligence of the defendants. They were, at the time, riding in an automobile owned and driven by George McCrimmon as his guests. For convenience, the cases were consolidated and tried together in the court below, and were argued together in this Court.

Pertinent evidence in behalf of the plaintiff is substantially as follows:

George McCrimmon testified that on the night of 26 December, 1939, he approached the Mason Street crossing of the Seaboard Air Line Railway in Franklinton, intending to use the same, driving his own automobile, and carrying Johnnie Henderson, one of the plaintiffs, and Sylvester Rattley, intestate of the plaintiff administratrix, who were

seated in the rear of the car. The street runs east and west, and the railroad north and south. McCrimmon approached from the west. There are four tracks here, including a sidetrack. There was a two-story building to the right, which obscured the view to the south, so that one could not see "around or over it" if within two or three feet from the sidetrack. Witness stopped his car, looked and listened and heard nothing, but saw a train standing still at the left, with headlights shining down the track to the right. He saw nothing to the south. He then started across, and when about as far as the first or second track he saw the headlights of the train coming from the south, tried his best to get away, but was struck before he could do so.

Witness looked both ways to see if any train was coming, and listened, and waited to see if the track was clear, but did not hear any whistle, bell or signal. Mason Street is a much used public street, running from the stop light down by the tracks across to the hotel. On this night there were no signals, gongs, bells or automatic device to give warning of an approaching train, and there was no watchman at the crossing. The railroad maintains a watchman at the crossing in the daytime but not at night.

Sylvester Rattley was instantly killed, and witness and the other occupant of the car were injured.

The train which struck the automobile was a passenger train, known as the Silver Meteor, a streamlined train pulled by a Diesel engine. Witness estimated its speed as sixty miles per hour.

H. F. Fuller corroborated McCrimmon as to the obstruction of view caused by buildings close to the track. One could see twenty-five or thirty yards to the south when within two or three feet of the track.

H. H. Utley testified that there were no gongs, bells or lights to warn of the approach of trains. A man would just have to rely on his view of approaching trains.

Nathan J. Winn testified that when one was within three or four feet of the track he might see down it thirty-five or forty yards, but that looking to the right one could scarcely see anywhere.

Johnnie Henderson, one of the plaintiffs, testified that he was riding in the back seat of McCrimmon's car. "We stopped at the railroad crossing and looked and there was a train on the side—left-hand side—we didn't see nothing on the right-hand side—we started and got about across the track and that is all I remember." Witness only saw the train when it hit. Neither witness nor Rattley asked McCrimmon not to drive across the track, and witness said nothing to McCrimmon about what he saw. The car windows were up in front and behind. It was a cold night.

Buck Edwards testified that there were four tracks on this crossing, built close together, almost alike, but after you got there you could tell

the main line. View to the south is obscured to one approaching from the west because of buildings built close to the track.

Plaintiffs introduced an ordinance of the town of Franklinton limiting the speed of trains within the corporate limits to fifteen miles per hour. The crossing is within the corporate limits.

There was other evidence relating to the foregoing conditions and to the nature and extent of plaintiffs' injuries.

On conclusion of plaintiffs' evidence defendants moved for judgment of nonsuit, which was declined, and defendants excepted. Defendants then put on evidence contradicting plaintiffs' evidence in particulars, together with a map and photograph of the locale of the accident. (Since the motion to nonsuit is equivalent to a demurrer to plaintiffs' evidence, detailed transcript is unnecessary.) At the conclusion of the evidence, defendants renewed the motion for judgment of nonsuit, which was allowed in both cases. Plaintiffs severally appealed, assigning error.

*Charles P. Green for plaintiff Henderson, appellant.*

*Yarborough & Yarborough and John Kerr, Jr., for plaintiff Rattley, appellant.*

*Murray Allen for defendants, appellees.*

SEAWELL, J. We are unable to agree that the evidence of plaintiffs, taken in its most favorable light, affords no inference of negligence on the part of defendants. *Brown v. R. R.,* 195 N. C., 699, 143 S. E., 536; *Smith v. Coach Co.,* 214 N. C., 314, 199 S. E., 90.

Carefully considering the defendants' contention that they are relieved from proximate connection with plaintiffs' injuries through the intervening negligence of McCrimmon, driver of the car in which they were guests, we have reached the conclusion that the negligence of the defendants, assuming the facts to be as presented on the record, is too directly involved in the result to be subject to that doctrine.

The defendants insist that their negligence, if any there was, would not have produced the injury to the plaintiffs without the negligence of McCrimmon; and therefore it stands insulated, leaving McCrimmon's intervening negligence the sole proximate cause. The converse of this statement is universally accepted as true, and is thus expressed in a leading case: "When several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all or any of the causes; but it cannot be attributed to a cause unless without its operation the accident would not have happened." *Ring v. City of Cohoes,* 77 N. Y., 83, 90. It took the combined activities of the railroad company and McCrimmon to bring their respective vehicles into the collision

inflicting the injury. The formula proposed by defendants would exonerate both of them with equal impartiality.

The condition suggested by defendants is found expressed in exceptional cases, usually involving primary passive negligence, not as in itself exculpatory, but as concomitant with other conditions which are the utter want of logical connection between the primary negligence and the injury, or the unforeseeability of the intervening act—that is, that it was wholly unpredictable that a disconnected negligence of a third person would take hold of the original negligence in that way and turn it into an instrument of injury. We have no such condition here.

Crossing accidents are *sui generis* in the field of negligence, bringing into sharp focus, in one spot, the reciprocal duties of those seeking to use the intersection, nonobservance of which may result in disaster. These duties are reciprocal, interrelated, and immediate; and, whatever the previous history of neglect, are concurrently in force and effect as soon as the zone of danger is created by simultaneous approach to the intersection.

McCrimmon owed to the guests in his car—and, indeed, to the defendants—the duty of due care in the use of the crossing, variously translated into details with which we are familiar. The railroad company owed to McCrimmon and to these plaintiffs certain duties—amongst them prudent operation as to lookout, signals, warning, speed. Hence, it is not difficult to discern in the situation before us an interdependence of events; how the acts of McCrimmon might be affected by the negligence of the defendants. For the same reason it is difficult to eliminate the influence of defendants' negligence—assuming them to have been negligent—as a persisting factor in producing the result.

No negligence is "insulated" so long as it plays a substantial and proximate part in the injury. Restatement of the Law, Torts, sec. 447. "In order to relieve the defendant of responsibility for the event, the intervening cause must be a superseding cause. It is a superseding cause if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury." Shearman & Redfield on Negligence (1941), Vol. 1, p. 101, sec. 38; *Gordon v. Bedard,* 265 Mass., 408, 164 N. E., 374; *Liberty Mutual Ins. Co. v. Great Northern Ry.,* 174 Minn., 466, 219 N. W., 755; *Beach v. Patton,* 208 N. C., 134, 179 S. E., 446.

The negligence imputed to the defendants by the evidence is the operation of the train at an unlawful rate of speed, over an unprotected street crossing in a populous town, without signals or warning of its approach. Assuming this to be true, it was active negligence down to the moment of impact on the McCrimmon car, and proximately effective at that time, at least inferably so. Similarly, the McCrimmon car was in movement disregarding precautions and prudent operation when struck. The

omitted acts were all relative to these movements. The default was concurrent. *Ring v. City of Cohoes, supra.* The legal effect of the active negligence of two independent agencies, simultaneously occurring, and inflicting injury upon a third person, is well understood. It is epitomized in Restatement of the Law, Torts, sec. 439: "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

As to two persons or agencies guilty of such negligence, the effect of "intervening" negligence of an independent intelligent agent, at least in a case of this kind, hinges upon the question of foreseeability. The principle is clearly and correctly stated in *Butner v. Spease,* 217 N. C., 82, 86, 89, 6 S. E. (2d), 808, as follows: "Nevertheless, conceding the speed of the Butner car to be in excess of 45 miles an hour, and therefore *prima facie* unlawful, it is manifest that its speed would have resulted in no injury but for the 'extraordinarily negligent' act of the defendant Spease —in the language of the Restatement of Torts, sec. 447. . . . The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury. *Newell v. Darnell* (209 N. C., 254, 183 S. E., 374); *Beach v. Patton* (208 N. C., 134, 179 S. E., 446); *Hinnant v. R. R.* (202 N. C., 489, 163 S. E., 555); *Balcum v. Johnson,* 177 N. C., 213, 98 S. E., 532. 'The test . . . is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected.' *Harton v. Tel. Co.,* 141 N. C., 455, 54 S. E., 299."

We cannot agree that the conduct of McCrimmon, as described in the evidence, was of such an extraordinary character as to be beyond the limits of foreseeability.

We have given careful consideration to the suggestion that plaintiffs were properly nonsuited because Henderson and Rattley permitted McCrimmon to approach and traverse the intersection negligently, with the windows of the car up, partly at least, interfering with the opportunity to hear, and that they gave McCrimmon no notice of a danger of which they should have been aware. We are of opinion they cannot be held for contributory negligence as a matter of law. The facts are for the jury. *Smith v. R. R.,* 200 N. C., 177, 156 S. E., 508; *Johnson v. R. R.,* 205 N. C., 127, 170 S. E., 120.

The judgments of nonsuit are reversed.

In No. 457, Reversed.

In No. 459, Reversed.