ROLAND J. BROWN, ADMINISTRATOR OF THE ESTATE OF OSSIE D. BROWN, DECEASED, v. ATLANTIC COAST LINE RAILROAD COMPANY
— AND —
WILLIAM E. PHILLIPS, SR., ADMINISTRATOR OF THE ESTATE OF WILLIAM E. PHILLIPS, JR., DECEASED, v. ATLANTIC COAST LINE RAILROAD COMPANY

No. 25

(Filed 11 March 1970)

**1. Railroads § 6— railroad's duty to give warning at obstructed crossing**

A railroad is under a duty to give timely warning when its train approaches a visually obstructed and much traveled crossing.

**2. Railroads § 6; Evidence § 17— crossing accident — evidence that locomotive failed to give signal**

Plaintiffs' evidence that none of the survivors of a crossing accident heard a bell, horn, or whistle prior to the collision between defendant's locomotive and the truck in which the survivors were riding as passengers, and that a nearby householder heard the collision and then a long whistle but had heard no signal from the train prior to the collision, *held* sufficient to justify a jury finding that defendant failed to give any warning as its locomotive approached the crossing.

**3. Railroads § 5— crossing accident — negligence of driver — knowledge of obstruction**

Evidence that the driver of a truck drove toward a railroad crossing at an undiminished speed of 30 to 35 mph despite her knowledge that the crossing was visually obstructed, *held* sufficient to establish the negligence of the driver.

**4. Railroads § 7— crossing accident — death of passengers — imputation of driver's negligence**

Under the facts of this wrongful death action resulting from a collision between defendant's locomotive and the truck in which plaintiff's intestates were passengers, the negligence of the truck driver in approaching the crossing at an undiminished speed of 30 to 35 mph despite her knowledge that the view of the crossing was visually obstructed, *held* not imputable to the intestates.

**5. Railroads § 6— railroad crossing — duty of railroad to warn motorist**

Ordinary human experience demonstrates that a train crew should reasonably foresee that the driver of an automobile nearing a railroad crossing may be unaware of the train's approach and drive upon the track unless he receives timely warning that the train is coming — inattention of the motorist being more likely if the crossing is obstructed, little used by the railroad, and much used by the public; the railroad's failure to protect the traveling public against this risk is negligence.

**6. Negligence § 10— foreseeable intervening forces — effect on original risk**

Foreseeable intervening forces are within the scope of the original risk,

and hence of defendant's negligence; intervening causes which fall fairly in this category will not supersede the defendant's responsibility.

**7. Railroads §§ 5, 7— crossing accident — death of truck passengers — concurring negligence of driver and railroad — nonsuit**

In an action for wrongful death resulting from a collision between defendant's locomotive and the truck in which plaintiffs' intestates were riding as passengers, plaintiffs' evidence that the defendant's locomotive approached the crossing without giving any warning or signal and that the driver of the truck, with full knowledge that her view of the crossing was obstructed, drove toward the crossing at an undiminished speed of 30 to 35 mph, *held* sufficient to support a jury finding that defendant's negligence concurred with that of the truck driver in proximately causing the deaths of the intestates; and the defendant's motion for nonsuit was improperly granted.

MOORE, J., did not participate in the consideration or decision of this case.

ON certiorari to review the decision of the Court of Appeals reported in 4 N.C. App. 169, 166 S.E. 2d 535, which affirmed the judgment of nonsuit entered by *Godwin, S.J.,* in the Superior Court of LEE, docketed and argued in the Supreme Court as Case No. 54 at the Fall Term 1969.

These two actions for wrongful death, which were consolidated for trial, result from a collision between defendant's train and the truck in which plaintiffs' intestates, Ossie D. Brown and William E. Phillips, Jr., were passengers.

Plaintiffs' evidence tended to show: On 12 November 1966 at 10:30 p.m., Mrs. Jean Phillips was driving her husband's pickup truck westerly on Rose Street in the town of Sanford. Ossie Brown, the mother of the driver, was seated beside her in the cab. Mrs. Phillips' husband, her brother, Gordon Brown, and her 12-year-old son, William E. Phillips, Jr., were seated in the open bed of the truck. Rose Street is a four-lane highway, "a major thoroughfare" forty-eight feet wide, which runs generally east and west. Two lines of defendant's railroad tracks, running approximately north and south, intersect Rose Street at right angles twenty-eight feet west of the west edge of Chatham Street. Chatham, a two-lane street twenty feet wide, intersects Rose Street from the north to form a "T" intersection. There are no obstructions between Chatham Street and the railroad tracks. However, an oil company's tanks and warehouse, located in the northeast corner of the Rose-Chatham intersection, obstruct the view to the north. A motorist traveling west on Rose Street cannot see a train approaching from the north until he enters the intersection. The speed limit for this area is 35 MPH.

Mrs. Phillips entered Rose Street three blocks east of the railroad crossing. She knew the location of the crossing but had never seen a train on it. Traveling at 30-35 MPH in the northernmost lane of Rose Street, she approached the crossing without slowing down. When she entered the intersection she looked to the right. She saw a swirling light bearing down from the north when she was between Chatham Street and the railroad. At that point she was "probably twenty feet" from the train. Knowing that she was too close to stop, she "swerved to the left and speeded up, trying to get across before the train hit." The engine hit the truck broadside on the right. In the collision Mrs. Brown and William E. Phillips, Jr., were killed. None of the survivors heard a bell, horn, or whistle before the impact. Mr. Phillips heard the roar of the diesel engine when the truck swerved, about two seconds before the crash. He was thrown about sixty feet and, as he was "sailing through the air," he heard a whistle blowing. A householder, living forty yards from the Rose-Chatham intersection, heard the collision and immediately thereafter, a long whistle. Prior to the impact he had heard no signal from the train.

The transcript does not reveal the frequency with which trains traversed the Rose Street crossing. However, upon the argument before us, counsel stated that two trains (one each way) used the crossing daily.

At the conclusion of plaintiffs' evidence, the court allowed defendant's motion for nonsuit, and plaintiffs appealed.

*Pittman, Staton & Betts for plaintiff appellants.*

*Henry & Henry and Cameron, Harrington & Love for defendant appellee.*

SHARP, J.

[1-3] Defendant Railroad was under a duty to give timely warning when its train approached the visually obstructed and much traveled Rose Street crossing. *Cox v. Gallamore,* 267 N.C. 537, 148 S.E. 2d 616; *Jarrett v. R. R.,* 254 N.C. 493, 119 S.E. 2d 383; *High v. R. R.,* 248 N.C. 414; 103 S.E. 2d 498; *Summerlin v. R. R.,* 238 N.C. 438, 78 S.E. 2d 162; 6 Strong, N. C. Index *Railroads* § 6 (2d ed. 1968). Assuming the truth of plaintiffs' evidence, as we must in passing upon a motion for nonsuit, it would justify a finding by the jury that defendant failed to give any warning as its locomotive approached the crossing. *Kinlaw v. R. R.,* 269 N.C. 110, 152 S.E. 2d 329. Plaintiffs' evidence establishes the negligence of Mrs. Phillips. With full knowledge of the obstructed crossing, she drove toward it

at an undiminished speed of 30-35 MPH. *Carter v. R. R.*, 256 N.C. 545, 124 S.E. 2d 561; *Summerlin v. R. R., supra.*

[4]   On this evidence the negligence of the driver cannot be imputed to plaintiffs' intestates, and they were guilty of no contributory negligence. *Harper v. R. R.*, 211 N.C. 398, 190 S.E. 750; *Johnson v. R. R.*, 205 N.C. 127, 170 S.E. 120; 6 Strong, N. C. Index *Railroads* § 7 (2d ed. 1968). Therefore, unless Mrs. Phillips' negligence relieves defendant Railroad from liability, the judgments of nonsuit were erroneously entered. Defendant contends that even if plaintiffs' evidence shows it to have been "in some respect negligent," it also shows the death of plaintiffs' intestates to have been "independently and proximately produced by the wrongful act, neglect or default of a responsible third person, to-wit: Mrs. Phillips, the operator of the pickup truck." In support of this proposition, defendant relies, *inter alia*, upon *Jones v. R. R.*, 235 N.C. 640, 70 S.E. 2d 669; *Hinnant v. R. R.*, 202 N.C. 489, 163 S.E. 555, and — most heavily — upon *Jeffries v. Powell and Branch v. Powell*, 221 N.C. 415, 20 S.E. 2d 561.

*Jeffries v. Powell and Branch v. Powell, supra*, were suits against a railroad by the driver of an automobile and the administrator of his deceased passenger. The driver was injured and the passenger killed when a train struck the vehicle at a grade crossing. Plaintiffs' evidence tended to show that the "whistle didn't blow and the bell didn't ring." In affirming judgments of nonsuit, Winborne, J. (later C.J.), said: "[I]t is clear from the evidence that the negligence of Branch (the driver) was such as to insulate the negligence of defendants, and that his negligence was the sole proximate cause of the collision between his automobile and the train of defendants in which Jeffries lost his life." In concluding the opinion he quoted from *Chinnis v. R. R.*, 219 N.C. 528, 531, 14 S.E. 2d 500, 502: "Conceding that there was evidence of failure on the part of defendant to sound whistle or bell to give warning of the approach of the train to the crossing, it is clear that the active negligence of the driver of the automobile, subsequently operating, was the real efficient cause of the injury to plaintiff's intestate. . . . The negligence of the driver of the automobile was patent. It intervened between the failure of the defendant to give warning of the approach of the train to the crossing and the injury to plaintiff's intestate, and it began to operate subsequent to any act of negligence on the part of defendant, and continued to operate to the instant of injury."

Plaintiffs in the instant case, contending that intestates' deaths were proximately caused by the joint and concurring negligence of defendant Railroad and the driver of the truck, rely, *inter alia*, upon

*Cox v. Gallamore,* 267 N.C. 537, 148 S.E. 2d 616; *Henderson v. Powell and Rattley v. Powell,* 221 N.C. 239, 19 S.E. 2d 876; *Harper v. R. R.,* 211 N.C. 398, 190 S.E. 750; *Johnson v. R. R.,* 205 N.C. 127, 170 S.E. 120.

In *Henderson* and *Rattley, supra,* two passengers were injured, one fatally, when McCrimmon, the operator of the automobile in which they were riding, drove upon a blind crossing over a much used public street. There was no watchman or automatic signaling device to give warning of an approaching train. The driver testified that he stopped his car, looked and listened. Then, seeing nothing and hearing no whistle, bell, or signal, he drove upon the tracks and was struck by a speeding train. The trial judge nonsuited the plaintiffs, who appealed. In overruling the nonsuit and disposing of defendant's contention that "the intervening negligence" of the driver of the car "insulated" the defendant's negligence and became the "sole proximate cause," Seawell, J., speaking for the Court, reasoned: "It took the combined activities of the railroad company and Mc-Crimmon to bring their respective vehicles into the collision. . . . The formula proposed by defendants would exonerate both of them with equal impartiality." The duties of the railroad and those using the crossing "are reciprocal, interrelated, and immediate; and, whatever the previous history of neglect, are concurrently in force and effect as soon as the zone of danger is created by simultaneous approach to the intersection." No negligence is "insulated" so long as it plays a substantial and proximate part in the injury. The legal effect of the active negligence of two independent agencies, simultaneously occurring, and inflicting injury upon a third person hinges upon the question of foreseeability. The test is whether the intervening act and the resultant injury is one that the original actor could have reasonably foreseen and expected. The negligence of McCrimmon was not "of such an extraordinary character as to be beyond the limits of foreseeability."

As opinion writers have frequently noted, cases involving grade-crossing accidents are myriad, and "no good can be obtained from attempting to analyze the close distinctions drawn in the decisions of these cases for each case must . . . be governed by the controlling facts there appearing." *Faircloth v. R. R.,* 247 N.C. 190, 193, 100 S.E. 2d 328, 331, and *Hampton v. Hawkins,* 219 N.C. 205, 209, 13 S.E. 2d 227, 229. Gilliam, District Judge, put it succinctly: "Any effort to reconcile the North Carolina law on the subject of insulating negligence seems futile." *Cronenberg v. United States,* 123 F. Supp. 693, 699.

Prosser, in his treatise on *Torts* § 51 (3d ed. 1964) analyzes the problems of intervening causes with his usual clarity. Except when quoted, we summarize pertinent portions of his discussion:

The question is not one of actual causation because the problem never arises until causation is established. The query is "whether the defendant is to be held liable for an injury to which he has in fact made a substantial contribution, when it is brought about by a later cause of independent origin. . . . The older cases tend to ask the question, why should the defendant be held liable for harm brought about by something for which he is not responsible? The later ones tended to ask instead, why should he be relieved of liability for something that he has caused, along with other causes?" Since an infinite number and variety of causes may intervent after the defendant's negligence is an accomplished fact, "out of sheer necessity and in default of anything better," the courts have had "to fall back upon the scope of the original foreseeable risk which he has created." They say, therefore, that the defendant is to be held liable only if the intervening cause is foreseeable. "If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant had reason to anticipate under the particular circumstances, he may be negligent among other reasons because he failed to guard against it; or he may be negligent only for that reason." If it be determined "that the defendant's duty requires him to anticipate the intervening misconduct, and guard against it, it follows that it cannot supersede his liability."

There are many situations in which the reasonably prudent man is expected to anticipate and guard against the conduct of others. Prosser, *supra,* § 33. "[H]e is required to realize that there will be a certain amount of negligence in the world. In general, where the risk is relatively slight, he is free to proceed upon the assumption that other people will exercise proper care. . . . But when the risk becomes a serious one, either because the threatened harm is great, or because there is an especial likelihood that it will occur, reasonable care may demand precautions against 'that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated.' 'It is not due care to depend upon the exercise of care by another when such reliance is accompanied by obvious danger.' Thus an automobile driver may not proceed blindly across a railway track, upon the assumption that any approaching train will sound bell and whistle. . . ." Prosser, *supra* at p. 174. Conversely, even though the train crew knows that a motorist approaching a railroad crossing is charged with the duty of keeping a

vigilant lookout for an approaching train, it likewise has the duty to keep a lookout for the motorist and to give a timely warning of the train's approach. *Johnson v. R. R.*, 255 N.C. 386, 121 S.E. 2d 580.

[5, 6]    We think "ordinary human experience" demonstrates that a train crew should reasonably foresee that the driver of an automobile nearing a railroad crossing may be unaware of the train's approach and drive upon the track unless he receives timely warning that the train is coming. Inattention on the part of the operator of a motor vehicle is all the more likely if the crossing is obstructed, little used by the railroad and much used by the public. A railroad's failure to protect the traveling public against that very risk is negligence. "Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The courts are quite generally agreed that intervening causes which fall fairly in this category will not supersede the defendant's responsibility." Prosser, *supra*, § 51, p. 312. This is the rationale of *Henderson* and *Rattley, supra,* and of *Cox v. Gallamore, supra.*

[7]    At this stage of the proceedings, only plaintiffs' evidence has been heard. We express no opinion as to its veracity or the inferences which arise from it. We merely hold that plaintiffs' evidence was sufficient to support a finding that defendant failed to signal the approach of its train to the crossing and that its negligence concurred with that of Mrs. Phillips in proximately causing the deaths of plaintiffs' intestates. The judgment of nonsuit is

Reversed.

MOORE, J., did not participate in the consideration or decision of this case.