OF

# NORTH CAROLINA

AT

# RALEIGH

FALL SESSION 1970

## SOUTHERN RAILWAY COMPANY v. HUTTON & BOURBONNAIS COMPANY

No. 7025SC604

(Filed 16 December 1970)

1. **Automobiles § 46; Railroads § 5— speed of train — opinion testimony — opportunity for observation**

    Any person of ordinary ability and intelligence who has observed the passage of railroad trains is competent to testify as to his opinion of the rate of speed a train was traveling if he had a reasonable opportunity to observe the train in motion and did observe it.

2. **Railroads § 5— speed of train— opinion testimony — absence of testimony that witness observed train**

    In this action by plaintiff railroad to recover for damages sustained by its train in a collision with defendant's tractor-trailer, the trial court committed prejudicial error in the admission of opinion testimony by defendant's witness as to the speed of the train where the witness did not testify that he actually saw the train prior to the collision.

3. **Railroads § 6— duty to warn of approaching train**

    Plaintiff railroad was under a duty to give timely warning of the approach of its train to a grade crossing within a municipality.

4. **Negligence § 41— instructions on insulating negligence — absence of request**

    When the law on proximate cause is properly defined and applied, the subordinate phase of insulating negligence is encompassed therein, and absent a request for special instructions, it is not error to fail to elaborate thereon.

5. **Railroads § 5— contributory negligence of railroad — jury question**

In this action by a railroad to recover for damages sustained by its train in a collision with defendant's tractor-trailer, the question of whether the railroad's negligence was a proximate cause of the collision was for the jury.

6. **Negligence § 34— contributory negligence as matter of law — failure to show right to relief**

Where in a negligence action the evidence of a party with the burden of proof discloses contributory negligence so clearly that no other reasonable conclusion may be drawn therefrom, the facts and the law are that the party has shown no right to relief.

7. **Railroads § 5— crossing accident — counterclaim against railroad — directed verdict for railroad**

In this action by plaintiff railroad to recover for damages sustained by its train in a collision with defendant's tractor-trailer, the trial court did not err in directing a verdict against defendant on its counterclaim for damages to its tractor-trailer, where the evidence clearly established that the driver of defendant's tractor-trailer was negligent in failing to look before driving onto the tracks and that such negligence was a proximate cause of the collision. Rule of Civil Procedure No. 50.

APPEAL by plaintiff and defendant from *Martin (Harry C.)*, *Judge of the Superior Court*, at the May 1970 Civil Session of Superior Court held in BURKE County.

*W. T. Joyner, and Riddle & McMurray by John H. McMurray for plaintiff appellant.*

*Keener & Cagle by Joe N. Cagle for defendant appellant.*

MALLARD, Chief Judge.

Plaintiff, Southern Railway Company (Southern), instituted this action to recover damages of defendant, Hutton & Bourbonnais Company (Hutton), as a result of a collision between its Passenger Train No. 16 and a tractor-trailer unit operated by an agent of Hutton. Southern alleged that Hutton was negligent. Hutton denied negligence and alleged contributory negligence and last clear chance. Hutton also asserted a counterclaim for $14,187.00 damages which it allegedly sustained as a result of the negligence of Southern.

The parties stipulated that Southern sustained physical damages in the amount of $4,400.00 in the collision. Southern alleged and offered evidence as to damages for the loss of use of its train engine during the time required to repair it, but no stipulation was made relating to this element of damages. The parties

also stipulated that Hutton sustained $14,187.00 damages to its tractor-trailer unit in the collision.

The evidence for Southern tended to show that on 22 March 1967 its Passenger Train No. 16 pulled by a diesel engine left Asheville at 2:35 p.m. headed eastward for Hickory and points beyond. It was due in Hickory at 5:05 p.m., and at about 5:00 p.m. the train was blowing its whistle and ringing its bell as it approached the 9th Street crossing within the City of Hickory at the speed of about 35 to 40 miles per hour. There it collided with a tractor-trailer unit being operated by an employee of Hutton. It was admitted that this employee was acting in the course and scope of his employment at the time of the collision. The sun was shining and the weather was clear. The speed limit for trains operating within the City of Hickory was 45 miles per hour. Approaching the 9th Street crossing, the railroad tracks run east and west. Ninth Street crosses the tracks running north and south. Hutton's loading dock is "100 and some odd feet" to the railroad tracks and is separated from the tracks by Main Avenue, N.W., which runs parallel with and 25 to 30 feet north of the tracks. Hutton's dock is west of 9th Street. Main Avenue, 9th Street, and the railroad tracks are on the same grade and all are level. From the 9th Street intersection looking westerly, the railroad tracks are straight for a distance of 1,200 feet to two miles. At the time of the collision, there was nothing to obscure one's vision between the "block bounded by main line of Southern Railway, Main Avenue North, 9th Street and 11th Street, but a few telephone poles." From where it had been loaded at Hutton's loading dock, the tractor-trailer traveled slowly east on Main Avenue, N.W., to 9th Street and either stopped and then moved or continued to move slowly onto the tracks in front of the train. Southern's witness Colon Elliott testified that he observed the tractor-trailer from the time it turned onto 9th Street until the collision occurred and that "I did not see the driver look up or down the tracks. He was kind of looking straight ahead and that would be about where I was sitting."

Southern's witness Mark McCall testified that he was the engineer on Southern's train and that he first observed the tractor-trailer when he was at the first crossing west of the 9th Street crossing. He testified: "I watched the tractor-trailer continuously from the first time I saw it until the impact. I kept my eyes on him and that is the reason I was blowing so

much. I was afraid he would not stop and I was trying to get his attention so that he would stop. He never stopped and continued right out in front of the train." He also testified that he expected the vehicle to stop before it got to the crossing and that he applied the brakes to the train when it was about two car lengths west of the crossing.

Southern's evidence further tended to show that the left front and side of the engine was damaged as it collided with the tractor-trailer. The trailer unit remained in and blocked the 9th Street intersection with the railroad while the tractor was located about 1,200 feet east of the intersection. After the collision, oil from the tractor spilled on the rails causing the wheels of the engine to slide and lessening the effect of the brakes. As a result of the collision, Southern lost the use of the engine for a period of fifteen days.

Hutton offered evidence which, in substance, tended to show by the witness J. T. Waddell that he was an employee of Southern and was fireman on the train involved in the collision. The oil on the tracks came from the tractor that was hit by the train. He testified: "As to whether I recall making the statement that in my opinion the train was traveling 55 miles an hour through the City of Hickory prior to the impact, well, I can't tell much about speed; I guess the regular speed of 55 miles an hour. I would not say. That speed is about right. I don't control the speed of the engine. The speedometer is before the engineer. I did see the tractor and trailer unit after the crash."

This witness on cross-examination testified: "We were running about on time on this date. He was going between 30 to 35 miles an hour."

Hutton's witness Charles Emmitt testified that he was employed by Hutton as a supervisor and that at the time of the collision he was in the office which was about 150 or 200 feet from the tracks. He was standing at the window in the office and could see the railroad tracks when he looked out. He testified: "Up west you can see 47 feet. Up east you can see 500 feet. I was right about 10 feet from the loading ramp. The window is right beside the loading dock about 10 feet from it." He also testified: "It was a Ryder truck that Hutton-Bourbonnias had leased and was involved in this accident. He pulled out to 9th Street and he swung over to his left toward the build-

R. R. Co. v. Hutton & Bourbonnais Co.

ing and he stopped at 9th Street." Then the following exchange occurred:

"Q.   Is there a stop sign there?

A.   Yes sir. He stopped and he made his right turn and then pulled out on the tracks. He turned and 'like a bullet' it was over and I told my wife to call an ambulance."

The witness Emmitt further testified that he did not hear any whistle being blown and when he went to the wreck, he saw a man lying there dead. There are no crossbars, electric bells or lights at that crossing between Main Avenue and the tracks. On cross-examination, this witness testified: "I was standing there at the window in the office. I saw the tractor pull out and I could see the railroad tracks from 9th Street in the westerly direction for about 500 feet." The distance from the intersection of Main Avenue and 9th Street that the tractor-trailer traveled after entering 9th Street was something like 25 feet.

On re-direct examination of Charles Emmitt, the following occurred:

"Q.   Do you have an opinion as to the speed of the train as it traveled up towards that intersection?

MR. McMURRAY: Objection.

COURT: Overruled.

A. Yes sir.

PLAINTIFF'S EXCEPTION NO. 3

Q. What is that opinion?

MR. McMURRAY: Objection.

COURT: Overruled.

PLAINTIFF'S EXCEPTION NO. 4

A.   In my opinion I would say it was doing 75 or 80 miles an hour."

On recross-examination of the witness, Charles Emmitt testified: "I looked out the window and saw the cars as they came by my window. I did not at any time see the train coming up the tracks. I was watching the tractor pulling out. I saw the train as it went into the tractor."

Hutton's evidence tended to show that the truck left the loading dock and pulled out slowly. It stopped before it went across the tracks and then pulled onto the tracks where it was struck by the train. There were no crossbars, flashing lights or bells, or any kind of electric light at the crossing. The engineer did not blow the whistle on the train until after it had hit the tractor-trailer.

Hutton's evidence further tended to show by the witness Edward Glenn Tucker that at the time of this collision he was working with Hutton as a receiving clerk and that he saw the train coming. He saw the tractor-trailer when it pulled out and "followed the truck and the train together and then when they hit I took off and ran across the tracks." The place where he was standing was about 50 feet from the actual point of impact of the tractor-trailer and the train. He had the opportunity to observe the train coming down from the 11th Street crossing. He formed an opinion as to the speed of the train and, in his opinion, it was about "45 miles an hour, maybe 50, somewhere between 40 and 50." He did not hear any whistle or bell from the time he saw the train until the accident.

Hutton's witness Everett B. Swanner, Jr., testified: "I did form an opinion as to the speed of the train as it passed me. I figure it was running about 50 miles an hour. At the point of impact it did not look like it had slowed any. I do not recall whether or not I saw any of the train's wheels sliding or slowing down the train. Like I said I was about 1600 feet back. I could not have seen that." On cross-examination, this witness testified that he made a statement within a week after the accident and that he could have stated that in his opinion the speed of the train was about 40 to 45 miles an hour at that time.

Hutton also introduced the ordinance of the City of Hickory which reads: "The speed of any engine or railroad train in passing through the city shall not exceed forty-five miles per hour."

At the close of all the evidence, Hutton moved for a directed verdict in favor of the defendant "on the ground that the facts in this lawsuit shows as a matter of law that the defendant is entitled to recover of the plaintiff on the counterclaim and that the defendant was not negligent in any way." No

specific ruling on this motion appears of record, and no exception was taken to the failure to rule thereon.

Southern thereupon moved that "having agreed upon the damages, that the evidence shows that the plaintiff was no way negligent and that if the plaintiff was, that it was insulated by the negligence of the defendant and that the court should allow a directed verdict for the plaintiff in the amount of the stipulated damages."

The court received an affirmative answer to its question of whether Southern was making the motion under Rule 50 for a directed verdict on the question of negligence, but the court did not rule on this motion. No exception and assignment of error appears in the record to the failure of the court to do so; therefore, the question of the failure to rule is not presented on this appeal.

Without ruling on either of the motions and no exceptions having been taken by either of the parties to the failure to rule thereon, the court asked if either of the parties had any issues that they cared to submit. Southern submitted two issues, one on the question of Hutton's negligence and the other on the question of Southern's damages. Hutton submitted five issues: a question on Hutton's negligence, a question on Southern's contributory negligence, a question on Southern's damages, a question on whether Hutton was injured by the negligence of Southern as alleged in the counterclaim, and the last relating to the amount of damages.

Thereafter, Southern made another motion for a directed verdict as to the counterclaim of Hutton in the following language: "The plaintiff at the conclusion of all of the evidence moves for a directed verdict as to the counterclaim of the defendant for the reason that the evidence, for the reason that all of the evidence and the evidence for the defendant shows that the operator of the tractor and trailer unit drove from a speed of two to seven miles an hour and drove onto the main line of Southern Railway Company directly in front of an oncoming train which was clearly visible to him and which he should have seen by the exercise of due care." Southern contended that such acts constituted contributory negligence as a matter of law. The court allowed the motion by Southern under Rule 50 for a directed verdict on the counterclaim.

The court submitted three issues to the jury, and they answered them as follows:

"1. Was Southern Railway Company's property damaged by the negligence of Hutton-Bourbonnais Company?

ANSWER: Yes.

2. Did Southern Railway Company contribute to its damages by its own negligence?

ANSWER: Yes.

3. What amount, if any, is Southern Railway entitled to recover from Hutton-Bourbonnais Company?

ANSWER: —————."

From the judgment on this verdict, both plaintiff and defendant appealed to this court.

### PLAINTIFF'S APPEAL

Southern's first assignment of error discussed in its brief is assignment of error three. By this assignment of error, Southern contends that the trial judge committed prejudicial error in allowing the defendant's witness Charles Emmitt to testify as to the speed of the train without any qualifying testimony that he observed the train for a sufficient distance to form an opinion as to speed.

[1, 2] Charles Emmitt testified on direct examination that from where he was in the office of Hutton, he was watching the truck pull out, saw it stop at 9th Street, and then he saw it pull onto the tracks and watched the tractor-trailer all the way from the loading dock at Hutton's until the time of the collision with the train and that "you can see" in a westerly direction for 47 feet. On cross-examination this witness testified that while he was standing there in the office, he "could see" the railroad tracks in a westerly direction for about 500 feet. He then was permitted to testify, over Southern's objection, that in his opinion the train was "doing 75 or 80 miles per hour." On recross-examination, this witness testified that he did not see the train coming up the tracks but that he saw it as it went into the tractor. Any person of ordinary ability and intelligence who has observed the passage of railroad trains is competent to testify as to his opinion as to the rate of speed a train was traveling, providing he had a reasonable opportunity

to observe the train in motion and did observe it. 2 Jones, Evidence, § 407, p. 762 (5th Ed. 1958) ; 83 A.L.R. 2d 1330; 156 A.L.R. 384; *Carruthers v. R.R.*, 232 N.C. 183, 59 S.E. 2d 782 (1950). The witness Charles Emmitt did not testify that he actually saw the train prior to the collision, and under the principles of law hereinabove set out, it was error to permit him to testify, over objection, as to the speed of the train. We hold that this error was prejudicial under the circumstances of this case, entitling Southern to a new trial.

Southern's other assignments of error discussed in its brief relate to the charge of the court with respect to the issue of contributory negligence, to the speed of the train, and with respect to the principle of intervening or insulated negligence.

[3] There was some evidence that the train failed to give any warning by blowing its whistle, ringing its bell, or otherwise, as it approached the intersection, which would justify the jury in finding that Southern failed to give any warning as its train approached the 9th Street crossing. It was the duty of Southern to give timely warning as its train approached the 9th Street crossing. *Brown v. R.R. Co.* and *Phillips v. R.R. Co.*, 276 N.C. 398, 172 S.E. 2d 502 (1970). There was also *some* competent evidence that Southern's train was traveling at a speed in excess of 45 miles per hour in violation of the city ordinance providing a 45 miles per hour maximum.

[4, 5] In *Henderson v. Powell* and *Rattley v. Powell*, 221 N.C. 239, 19 S.E. 2d 876 (1942), the Supreme Court said: "No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury." When the law on proximate cause is properly defined and applied, the subordinate phase of insulating negligence is encompassed therein, and absent a request for special instructions, it is not error to fail to elaborate thereon. 6 Strong, N.C. Index 2d, Negligence, § 41, p. 85. No request for special instructions appears on this record. We think that the question of whether Southern's negligence was a proximate cause of the collision was for the jury. We do not deem it necessary for decision in this case to further discuss either of Southern's other assignments of error in view of the fact that a new trial is awarded Southern for error in the admission of evidence.

### DEFENDANT'S APPEAL

Hutton contends that the trial court committed error by "dismissing defendant's counterclaim at the close of all the

evidence, by failing to submit issues arising on defendant's counterclaim to the jury as proposed by defendant, by failing to direct a verdict in favor of defendant on its counterclaim, by failing to direct a verdict that the defendant was not negligent, and by signing and entering the judgment."

[6, 7] It is apparent that Hutton's employee did not see the oncoming train. Under the circumstances of this case, Hutton's driver knew, or should have known, that he was approaching the railroad crossing. He drove the tractor-trailer slowly for a distance of about 25 feet on 9th Street before reaching the railroad tracks. The conclusion is inescapable that the driver of the tractor-trailer failed to look before driving onto the tracks at a time when, by looking, he could have seen the train and avoided the collision. It was his duty to look, and by failing to look, he did not exercise due care. That Hutton's employee was negligent and that his negligence was a proximate cause of the collision and resulting damage is clearly established by all the evidence. On Hutton's counterclaim, its position was the same as if it were the plaintiff. Hutton's evidence denies it the right to any relief. Where in a negligence action the evidence of a party with the burden of proof discloses contributory negligence so clearly that no other reasonable conclusion may be drawn therefrom, the facts and the law are that the party has shown no right to relief. *Hinnant v. R.R.*, 202 N.C. 489, 163 S.E. 555 (1932) ; 6 Strong, N.C. Index 2d, Negligence, § 34. Under such circumstances, it is proper for the court under Rule 50 of the Rules of Civil Procedure to direct a verdict against such party.

We are of the opinion and so hold that Judge Martin did not commit error in directing a verdict against Hutton on its counterclaim, in declining to submit issues on the counterclaim, in failing to direct a verdict in favor of Hutton on the counterclaim, or in failing to direct a verdict that Hutton was not negligent.

Hutton also contends that the trial court committed error in admitting evidence relating to Southern's damages and in permitting one of the witnesses for Southern to give his opinion that the engineer on the train was very careful. In view of the disposition made of the plaintiff's appeal, we do not deem it necessary to discuss these assignments of error.

On the defendant's appeal—No error.

On the plaintiff's appeal—New trial.

Judges PARKER and GRAHAM concur.